The Booth Packing Company, demandante y apelante, *v.* R. P. Sobrino y Hermano, demandada y apelada.

No. 3269.—*Visto:* Junio 5, 1924.  *Resuelto:* Marzo 6, 1925.

1. Contratos—Requisitos y Validez—Legalidad del Objeto y de la Causa.— Cuando existe un contrato de compraventa de frutas en conserva y el vendedor embarca mercadería que está inservible para el consumo de seres humanos, el contrato carece de objeto o causa y no puede obligarse al cumplimiento del mismo.

2. Ventas—Cumplimiento de Contrato—Entrega y Aceptación de la Mercancía.—Cuando existe un contrato de compra-venta de conservas alimenticias y la mercancía entregada es inservible para el consumo de seres humanos, la aceptación de aquélla por el comprador sin hacer objeción alguna a la misma dentro del término prescrito por el Código de Comercio no produce efecto alguno y el vendedor no puede recobrar el precio.

3. Ventas—Garantías (*Warranties*)—Renuncia de Derecho.—Cuando existe un

contrato de compraventa de conservas alimenticias y el vendedor entrega la mercancía inservible para el consumo de seres humanos, el comprador no renuncia su derecho a objetar a la calidad de la misma por el hecho de aceptar la entrega sin queja alguna.

Sentencia de *Charles E. Foote,* J. (San Juan, Primer Distrito), en una acción sobre cobro de giros, desestimando la demanda con imposición de costas. *Confirmada.*

*O. B. Frazer* y *R. Castro Fernández,* abogados de la apelante; *M. Tous Soto,* abogado de la apelada.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

La opinión de la corte inferior fué la siguiente:

"Se alegó substancialmente por la demandante, que allá por el mes de octubre de 1920, celebró con la demandada un contrato de compraventa mercantil, por el que se obligó a entregarle un determinado número de latas de conservas, peras y melocotones, siendo precio convenido de dicha venta la suma de $1,296.78; que la demandante cumplió su obligación y embarcó en el puerto de Baltimore, Md., las mercancías vendidas consignadas a la demandada, y que ellas fueron recibidas y aceptadas en Puerto Rico por la sociedad demandada, quien aceptó dos giros a treinta días plazo y por el importe del precio de dicha mercancía; que al vencimiento de estas obligaciones y al ser presentadas las mismas para su cobro, la demandada se ha negado y niega a hacerlas efectivas.

"En su contestación la demandada acepta casi todas las alegaciones de la demanda, pero alegando en contrario y como materia de defensa, que pocos días después de recibida la mercancía comprada, se notó que el contenido de las latas se encontraba fermentado y era inservible para el consumo por seres humanos, y que dichas latas fueron casi en su totalidad destruídas por oficiales de la Sanidad Local, por el mal estado en que se encontraba.

"Comparecieron las partes a juicio asistidas de sus respectivos abogados, y practicaron su prueba sometiendo finalmente el caso por medio de alegatos.

"Después de estudiar detenidamente las alegaciones y prueba presentadas, la corte ha podido llegar a las conclusiones siguientes:

"Que de acuerdo con la declaración del testigo de la demandante Eugene F. Thomas, (contestación a la pregunta No. 21 de la deposición), la fermentación o descomposición del producto, caso de que esto hubiese sucedido, tenía que haberse iniciado cinco días después de su envase, y esto se hizo en julio de 1922.

"Que no hay duda de que el producto vendido estaba descompuesto y tanto es así que fué decomizado por la sanidad local, y que si es cierto lo manifestado por el testigo Thomas, y creemos que lo es, las peras y melocotones eran inservibles para el consumo por seres humanos en la fecha en que fueron embarcados (casi tres meses después del envase), y por tanto ellas no podían ser objeto de comercio de acuerdo con nuestras leyes y reglamentos de sanidad.

"Que las latas de peras y melocotones presentadas como evidencia tienen señales inequívocas de haber sido envasadas mucho tiempo antes de su venta, ya que en muchas de ellas aparecen pedazos de etiqueta vieja debajo de otra más reciente y en otras el óxido de las latas aparece raspado en sitios donde se quitó la etiqueta anterior; que de estos hechos se desprende una maliciosa intención por parte de la compañía vendedora de hacer aparecer mercancía vieja y no aceptable por producto fresco y bueno.

"Estas conclusiones obligan a resolver que el contrato entre las partes es nulo (inexistente), por carecer de objeto, no siendo aplicables los artículos 336 y 342 del Código de Comercio y la jurisprudencia de nuestro Tribunal Supremo en los casos de Schluter vs. Fernández, (30 D. P. R. 123) Marín vs. The Alps Drug Co., (32 D. P. R. 54), y sí lo es el 50 del Código de Comercio, en relación con los 1228 y 1238 del Código Civil, y que por ello procede declarar como declara sin lugar la demanda con costas a la demandante."

El primer señalamiento de error dice así:

"La corte inferior cometió error al declarar sin lugar la demanda, por haber llegado a las conclusiones de hecho que expresa en su opinión."

De acuerdo con este señalamiento la apelante trata de acreditar que la corte inferior sólo consideró una parte de la declaración del perito Thomas; que este último no solamente dijo que la descomposición se iniciaría dentro de cinco días después de ser envasado el producto, sino también que la mercancía fué detenida en Baltimore por varios meses; que el testigo examinó cada una de las latas antes de ser embarcadas y las encontró en perfectas condiciones; y que la descomposición se produciría porque la lata se infla o abre. La teoría es que si la mercancía estaba en buenas condiciones al ser embarcada, cualquier consiguiente deterioro debe

imputarse al comprador. Alega la apelante que la corte es- tuvo equivocada al declarar probado que dicha mercancía fué embarcada en condición inservible.

[1] La demandada presentó prueba tendente a demostrar que al ser abiertas las latas no servían para el consumo; que ellas, o algunas, eran artículos viejos con rótulos nuevos y que fueron decomisadas por las autoridades municipales de sanidad. Si la demandada recibió un artículo que se demostró era inservible, entonces hubo un conflicto de prueba y la apelante no nos ha convencido de que la condición inservible de la mercancía no era inherente desde el momento de su envase. Dada la condición de esta mercancía envasada, la corte tenía el derecho a inferir que el defecto se originó por la forma de verificarse el envase, o que de otro modo era inherente. Nos sentimos obligados a declarar que cuando se embarcan latas que contienen frutas es elemento esencial del contrato que el contenido esté en condiciones de utilidad para el consumo público al ser luego abiertos los envases dentro de un tiempo razonable. Por la mala condición del artículo al momento de abrirse el envase la corte podría llegar a la conclusión de que la mercancía era inservible al momento de la venta. Podemos imaginarnos, remotamente, por supuesto, que si no hubieran sido embarcadas las latas a través del océano, podrían haber conservado su cualidad de comestible. Entonces habiéndolas comprado la demandada en Baltimore, sería responsable por este riesgo tropical. Sin embargo, incumbía a la demandante la obligación de demostrar que la condición surgió por alguna causa semejante, lo que no hizo. No creemos, sin embargo, que hubo alguna probabilidad de que los trópicos o el océano originaron la condición inservible de la mercancía. Asumiendo la honradez de la demandante, no puede obligarse a la demandada al pago de artículos inservibles sin valor.

Transcribimos el segundo y tercer señalamiento de error:

"2. La corte inferior cometió error al no declarar que el contrato estaba perfeccionado y por tanto los daños a la mercancía son de cuenta del comprador.

"3. La corte inferior cometió error al no declarar prescrita la defensa especial de la demandada-apelada de acuerdo con el art. 336 del Código de Comercio de Puerto Rico."'

Los artículos 50, 333 y 336 del Código de Comercio, y 1182 y 1238 del Código Civil, prescriben lo siguiente:

"Art. 50.—Los contratos mercantiles, en todo lo relativo a sus requisitos, modificaciones, excepciones, interpretación y extinción y a la capacidad de los contratantes, se regirán, en todo lo que no se halle expresamente establecido en este Código o en leyes especiales, por las reglas generales del derecho común."

"Art. 333.—Los daños y menoscabos que sobrevinieren a las mercaderías, perfecto el contrato y teniendo el vendedor los efectos a disposición del comprador en el lugar y tiempo convenidos, serán de cuenta del comprador, excepto en los casos de dolo o negligencia del vendedor."

"Art. 336.—El comprador que, al tiempo de recibir las mercaderías, las examinare a su contento, no tendrá acción para repetir contra el vendedor, alegando vicio o defecto de cantidad o calidad en las mercaderías.

"El comprador tendrá el derecho de repetir contra el vendedor por defecto en la cantidad o calidad de las mercaderías recibidas enfardadas o embaladas, siempre que ejercite su acción dentro de los cuatro días siguientes al de su recibo, y no proceda la avería de caso fortuito, vicio propio de la cosa, o fraude.

"En estos casos, podrá el comprador optar por la rescisión del contrato o por su cumplimiento, con arreglo a lo convenido, pero siempre con la indemnización de los perjuicios que se le hubieran causado por los defectos o faltas.

"El vendedor podrá evitar esta reclamación exigiendo, en el acto de la entrega, que se haga el reconocimiento, en cuanto a cantidad y calidad, a contento del comprador."

"Art. 1182.—Incumbe la prueba de las obligaciones al que reclama su cumplimiento, y la de su extinción al que la opone."

"Art. 1238.—Pueden ser objeto de contrato todas las cosas que no están fuera del comercio de los hombres, aun las futuras.

     \*　　 \*　　 \*　　 \*　　 \*　　 \*　　 \* "

[2] Llegamos a la conclusión de que el defecto de esta mer-

cadería no era una mera cuestión de calidad, sino que era totalmente inservible y por tanto la corte tuvo razón al decir que el contrato carecía de objeto. Desde el punto de vista de la demandada hubo una falta total de causa por su promesa de pago. Dentro de estas circunstancias convenimos con la corte inferior en que los casos de *Schluter* v. *Fernández*, 30 D. P. R. 123, y *Marín* v. *Alps Drug Co.*, 32 D. P. R. 54, no son de aplicación.

[3] El cuarto señalamiento de error es como sigue:

"La corte inferior cometió error al no declarar prescrita la defensa especial de la demandada-apelada de acuerdo con el artículo 342 del Código de Comercio de Puerto Rico."

Este artículo presupone la celebración de un contrato válido, que sostenemos no existía.

En cuanto a la admisión de las certificaciones de las autoridades municipales sobre la confiscación, estamos conformes en que la corte de distrito tenía facultad para tomar conocimiento judicial de la firma del comisionado municipal de sanidad y beneficencia. Por la misma razón las certificaciones de nacimiento y defunción no podrían ser presentadas sin prueba de la firma. Los funcionarios municipales son funcionarios secundarios del gobierno general dentro del significado de la Ley de Evidencia. Este fué el quinto señalamiento.

El sexto señalamiento se refiere a la admisión de prueba creditiva de que la demandante estaba dispuesta a admitir la condición de la mercancía y a aceptar un precio inferior. La corte admitió la prueba, tal vez erróneamente. Una de las dudas que hemos tenido fué si en realidad sólo algunas de las mercancías no se habían deteriorado toda vez que la demandada en cierta ocasión estuvo dispuesta a transar el asunto. De todos modos la prueba de ser inservible la mercancía fué tan robusta que las alegadas admisiones de la demandante no podían desempeñar gran papel. Toda la

prueba sostiene la conclusión de la corte y no vemos cómo hubiera podido llegarse a otra conclusión, aún cuando esta prueba de ofrecimientos de transacción no hubiera sido admitida.    Por tanto, las disposiciones del artículo 142 del Código de Enjuiciamiento Civil deben ser aplicadas, a saber:

"Art. 142.—En cualquier estado de un pleito la corte no tomará en cuenta algún error o defecto en las alegaciones o procedimientos que no afecten a lo esencial de los derechos de las partes, y no se revocará o invalidará ningún fallo por razón de dicho error o defecto."

*Debe confirmarse la sentencia apelada.*