GAYLE JULSRUD, ETC., demandantes y recurridos, *v.* PECHE DE PUERTO RICO, INC., demandada y recurrente.

*Número:* R-83-421    *Resuelto:* 28 de diciembre de 1983

*Wilfredo Luciano Quiñones,* abogado de la parte recurrente; *Federico Calaf Legrand,* de *Reichard, Colberg & Calaf,* abogado de la parte recurrida.

El JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

G. Julsrud y J. Avalo, quienes hacen negocios como San Juan, Ltd. (la compradora), se dedican a suplir provisiones a barcos de turismo que visitan el puerto de San Juan. El 12 de agosto de 1981 San Juan, Ltd. compró a Peche de Puerto Rico, Inc. (la vendedora) ochocientas cincuenta libras de rabo de langosta para cumplir una orden recibida del buque Mardi Gras. La entrega se efectuó el mismo día, alrededor de las cinco de la tarde. La compradora se dirigió de inmediato al muelle, donde arribó entre las 5:30 y las 5:45 p.m.

Los oficiales del buque inspeccionaron la langosta, que estaba congelada, y la colocaron en su frigorífico.

Al día siguiente, en alta mar, el personal de cocina del barco puso a descongelar quinientas libras de la langosta adquirida en San Juan. Al tiempo comenzó a percibirse un fuerte olor a amoniaco proveniente de los rabos. El personal resolvió que estos no eran aptos para el consumo humano y los lanzaron al mar. El resto de la langosta fue trasbordado a otro buque en Miami, al igual que el Mardi Gras, operado por Seachest Associates. Seachest informó el 16 de agosto de 1981 a su suplidora San Juan, Ltd. lo ocurrido y le expresó que el balance de la mercancía llegaría a San Juan el 19 de agosto.

El 17 de agosto San Juan, Ltd. notificó el suceso al gerente de la vendedora y solicitó su presencia en el muelle para recibir el cargamento.

El 19 de agosto de 1981 llegó a San Juan el cargamento restante de los rabos de langosta. Un técnico avisado por la compradora, San Juan, Ltd., director de Langeton Laboratories, Inc., firma especializada en el análisis de productos alimenticios, examinó preliminarmente la langosta, la transportó a su laboratorio y concluyó, al día siguiente, que el producto se encontraba en la etapa inicial de descomposición.

El tribunal de instancia determinó que cuando la langosta está congelada es imposible constatar su estado. Tras evaluar la prueba presentada resolvió, además, que la mercancía fue entregada por la vendedora a la compradora cuando se encontraba en el proceso inicial de descomposición.

Seachest no satisfizo a San Juan, Ltd. el precio de la mercancía averiada. El 24 de noviembre de 1981 San Juan, Ltd. demandó a la vendedora Peche de Puerto Rico. La vendedora alegó, entre otras defensas, que la acción estaba prescrita. El tribunal falló a favor de la compradora demandante y decretó la rescisión del contrato. La vende-

dora ha acudido en alzada ante nos. Su argumento central gira en torno a la prescripción, aunque también ataca la apreciación de la prueba. Acordamos revisar. El caso plantea cuestiones importantes sobre la diferencia entre los defectos de calidad o cantidad y los vicios internos, así como sobre la naturaleza de los plazos de denuncia y prescripción aplicables.

### 1. *La naturaleza de la venta*

La compraventa realizada en este caso es de índole mercantil. El Art. 243 del Código de Comercio, 10 L.P.R.A. sec. 1701, expresa que será mercantil la compraventa de cosas muebles para revenderlas con fines de lucro. *Waterman Export Corp.* v. *Valdejulli,* 88 D.P.R. 499, 503-504 (1963). En el análisis de este caso nos atendremos primeramente a lo dispuesto en el Código de Comercio o en leyes especiales y, en ausencia de disposición pertinente en tales cuerpos, a lo provisto en el Código Civil.

### 2. *La índole del vicio*

El Art. 263 del Código de Comercio, 10 L.P.R.A. sec. 1721, dispone que en toda venta mercantil el vendedor queda obligado a la evicción y saneamiento en favor del comprador, salvo pacto en contrario. Los Arts. 254 y 260 (10 L.P.R.A. secs. 1712 y 1718) reglamentan parcialmente las acciones que nacen de tal obligación.

El Art. 254 dispone:

> El comprador que, al tiempo de recibir las mercaderías, las examinare a su contento, no tendrá acción para repetir contra el vendedor, alegando vicio o defecto de cantidad o calidad en las mercaderías.

> El comprador tendrá el derecho de repetir contra el vendedor por defecto en la cantidad o calidad de las mercaderías recibidas enfardadas o embaladas, siempre que ejercite su acción dentro de los cuatro días siguientes al de su recibo, y no proceda la avería de caso fortuito, vicio propio de la cosa, o fraude.

En estos casos, podrá el comprador optar por la resción [*sic*] del contrato o por su cumplimiento, con arreglo a lo convenido, pero siempre con la indemnización de los perjuicios que se le hubieran causado por los defectos o faltas.

El vendedor podrá evitar esta reclamación exigiendo, en el acto de la entrega, que se haga el reconocimiento, en cuanto a cantidad y calidad, a contento del comprador.

El Art. 260 provee a su vez:

El comprador que no haya hecho reclamación alguna fundada en los vicios internos de la cosa vendida, dentro de los treinta días siguientes a su entrega, perderá toda acción y derecho a repetir por esta causa contra el vendedor.

Corresponde precisar cuál de estos dos artículos, si alguno, rige el caso presente.

La primera distinción a considerar es la existente entre cosa diversa (*aliud*) y cosa viciada. Cuando se entrega una cosa específica distinta de la pactada opera la figura de la cosa diversa, del *aliud pro alio*, lo que da margen a que el comprador pueda ejercer la acción de incumplimiento de contrato dentro del ancho plazo prescriptivo correspondiente.[1] Cuando se entrega la misma cosa requerida, aunque ésta presente vicios o defectos, el vendedor ha cumplido su obligación de proveer la cosa ordenada. Se trata entonces de la entrega de cosa viciada y las acciones disponibles son las edilicias —la acción redhibitoria o la de *quanti minoris*—, las que tienen vida mucho más corta que la de incumplimiento de contrato. J. Garrigues, *Tratado de Derecho Mercantil*, Madrid, Ed. Rev. Der. Mercantil, 1963, T. III, Vol. I, págs. 268–270. El caso de autos versa sobre la entrega de cosa viciada.

---

[1] Es innecesario, dados los hechos de este caso, expresarnos sobre la procedencia de los plazos de denuncia, en la situación del *aliud*, o analizar la difícil situación resultante cuando la cosa diversa vendida es de orden genérico. Véase: J. Garrigues, *Tratado de Derecho Mercantil*, Madrid, Ed. Rev. Der. Mercantil, 1963, T. III, Vol. I, pág. 5.

La segunda operación estriba en diferenciar entre los defectos de cantidad o calidad a que alude el Art. 254 y los vicios internos a que se refiere el Art. 260 del Código de Comercio.

Esta diferencia es antigua. Los Arts. 254 y 260 de nuestro Código de Comercio calcan los Arts. 336 y 342 del Código de Comercio español de 1885. El Código de Comercio español de 1829 reconocía también la diferencia en sus Arts. 370 y 371. Según Garrigues, el Art. 336 se aplica en el caso de vicios manifiestos y el 342, en el de vicios ocultos. Como el Código de Comercio no abunda en la diferencia, debe acudirse al Art. 1484 del Código Civil, equivalente al 1373 nuestro, 31 L.P.R.A. sec. 3841. Las diferencias de calidad son inherentes a la naturaleza de la mercancía, son diferencias básicas sobre su composición, sobre la índole de algún rasgo característico de la cosa, tales como diferencias de tejido, fibra, color, diseño, procedencia o carácter de las materias primas. El vicio oculto es el que escapa a la observación de una persona de diligencia media, el inherente al modo imperfecto en que la mercancía fue fabricada, embalada, manejada o custodiada, el que convierte en impropia la cosa para el uso a que ha de destinársele. Garrigues, *supra*, págs. 270-285.

Langle Rubio reconoce, al igual que Garrigues, que el concepto de vicio puede causar diferencias de criterio, "pero es llano que se trata de cualquiera anormalidad o imperfección de la cosa misma, no al compararla con otra mejor, sino al estimarla en su propia individualidad, como perjudicial para el uso ordinario de ella, o como inferior a su natural estado, tenido en cuenta al contratar". E. Langle Rubio, *Manual de Derecho Mercantil Español*, Barcelona, Ed. Bosch, 1959, T. III, pág. 160.

Gay de Montellá se manifiesta en forma análoga cuando afirma que:

Entendemos por vicios internos aquellos que no pueden descubrirse a primera vista, ni tan solamente mediante un dete-

nido examen, sea porque no aparezcan súbitamente, sea porque hayan pasado desapercibidos por haber sido ocultados cuidadosamente. Caracteriza a estos vicios internos de la cosa vendida que su causa se halla en la misma cosa, la cual, no siendo discernible con la sola inspección o examen superficial, son descubribles sólo mediante el análisis o la descomposición de la misma cosa.

R. Gay de Montellá, *Código de Comercio Español*, 2da ed. Barcelona, Ed. Bosch, 1948, T. III, Vol. 1, pág. 208. Véase, además, F. Sánchez Calero, *Instituciones de Derecho Mercantil*, 5ta ed., Valladolid, Ed. Clares, 1976, pág. 386.[2]

En el caso de autos, según las determinaciones de hecho del tribunal de instancia, el vicio no era manifiesto. El estado de descomposición de los rabos de langosta no podía precisarse antes de su descongelación. En el caso de ciertos artículos comestibles, el hecho de que la mercancía esté averiada puede descubrirse a simple vista. *Schluter* v. *Fernández*, 30 D.P.R. 123 (1922). Aquí no. El vicio era oculto o interno, escapaba a la observación de una persona de diligencia media. Se trataba de una imperfección de la cosa misma, producto a todas luces de un cuido inadecuado.[3] El artículo a aplicar es el 260 del Código de Comercio.

3. *El significado del Art. 260 del Código de Comercio. Los términos prescriptivos aplicables a la compraventa mercantil de cosas afectadas por vicios internos*

Nos hemos referido al alcance del Art. 260, antes transcrito, en lo que se refiere al sentido de la frase "vicios inter-

---

[2] Algunos códigos modernos evitan las dificultades del derecho español derivadas de las clasificaciones descritas mediante el tratamiento uniforme de los vicios internos y los defectos de cantidad o calidad. Art. 1490 del Código Civil italiano. P. Greco y G. Cottino, *Della Vendita* (parte de A. Scialoja y G. Branca, *Commentario del Codice Civile*), Roma, Soc. Ed. Foro Italiano, 1970, pág. 185; F. Andrade Pires De Lima y J. De Matos Antunes Varela, *Código Civil Anotado*, Coímbra, Coímbra Ed., 1968, Vol. II, Art. 916, págs. 158–159.

[3] La carga de probar, aunque sea circunstancialmente, el vicio y su preexistencia corresponde al comprador. Greco y Cottino, *op. cit.*, pág. 203. Sobre otros aspectos del problema, véase: G. Ferri, *Manuale di Diritto Commerciale*, 3ra ed., Torino, Unione Tip.—Ed. Torinese, 1972, pág. 679. El tribunal de instancia

nos". Corresponde precisar ahora el significado de la voz "reclamación", a los fines de determinar la función de los treinta días a que alude el artículo. Se recordará que el Art. 260 exige que toda "reclamación" fundada en los vicios internos de la cosa vendida se haga "dentro de los treinta días siguientes a su entrega". En el caso de autos, la compradora notificó por primera vez a la vendedora la existencia del vicio cinco días después de la entrega, pero no entabló demanda hasta tres meses, nueve días después de la transacción. La acción estaría prescrita si por "reclamación" se entendiese que debe incoarse demanda en corte dentro de un plazo de caducidad de treinta días.

La jurisprudencia española está dividida sobre esta cuestión. Un número de sentencias sostiene que la acción prescribe de no acudirse a los tribunales dentro de los treinta días de la entrega. S. Núm. 156 de 6 de julio de 1915, Núm. 77 de 3 de marzo de 1919, Núm. 42 de 27 de mayo de 1926, Núm. 157 de 15 de julio de 1926, Núm. 27 de 3 de febrero de 1928, Núm. 146 de 21 de febrero de 1957 y Núm. 124 de 24 de abril de 1958. En otras se ha resuelto que el término de treinta días es un plazo de denuncia, que la reclamación no tiene que formularse judicialmente, que cualquier tipo de notificación basta y que la acción por vicios internos no prescribe hasta los seis meses a contar desde la entrega. S. Núm. 36 de 28 de junio de 1946, Núm. 11 de 9 de marzo de 1948, Núm 76 de 2 de diciembre de 1954, Núm. 3 de 3 de enero de 1957, Núm. 2744 de 16 de junio de 1972.

Lo anterior revela que no existe en España jurisprudencia constante o pacífica sobre el particular. A poco que se adentre el investigador en la jurisprudencia favorable a la posición de que debe acudirse al foro judicial dentro de los treinta días siguientes a la entrega, se topa con una circunstancia especial actualmente ausente de nuestro ordenamiento jurídico. En España sigue vigente hoy, contrario a

---

concluyó en este caso que "la mercancía en cuestión fue entregada a la demandante estando ya en proceso inicial de descomposición". No hay base en autos para intervenir con la apreciación de la prueba por el juzgador de los hechos.

Puerto Rico, el Art. 2.127 de la Ley de Enjuiciamiento Civil de 1881, el cual dispone, en parte:

> Cuando proceda hacer constar el estado, calidad o cantidad de los géneros recibidos, o de los bultos que los contengan, conforme a lo dispuesto en los articulos 219, 362 y párrafo segundo del 370 del Código, y demás casos análogos, el interesado acudirá al Juez en solicitud de que ordene se extienda diligencia expresiva de aquellas circunstancias, y si fuere necesario nombre perito que reconozca los géneros o bultos.

Las sentencias que entienden que la reclamación a efectuarse entraña una comparecencia judicial, se apoyan principalmente en el argumento de que el Art. 342 del Código de Comercio español es uno de los "casos análogos" a que se refiere el Art. 2.127 de la Ley de Enjuiciamiento Civil. En estricto análisis, la primera corriente jurisprudencial citada exige que se cumpla con la especie de antejuicio estipulado en el Art. 2.127, no que se entable la acción judicial ordinaria dentro de los treinta días siguientes a la entrega de la cosa viciada.

Derogada en Puerto Rico la Ley de Enjuiciamiento Civil de 1881, hallamos que tiene mayor valor persuasivo la corriente que concibe el término de treinta días como un plazo de denuncia. En la propia España, a pesar de la continuada vigencia del Art. 2.127 y en contraste con la división existente en la jurisprudencia, la doctrina es virtualmente unánime en cuanto a catalogar los treinta días como un plazo de denuncia. Garrigues ha escrito:

> No puede negarse, sin embargo, que el hacer intervenir a los Tribunales de Justicia, bien que sea en un acto de jurisdicción voluntaria, cada vez que un comprador quiera reclamar por defectos de la cosa comprada, es un sistema excesivo y que se traduce en una innecesaria paralización del tráfico de buena fe. Sólo cuando el vendedor se niegue a prestar atención a las reclamaciones del comprador es lógico que éste acuda a los Tribunales. Mas ningún comprador de buena fe estará constantemente acudiendo a ellos antes de saber cuál es la postura del vendedor.

Garrigues, *ante*, págs. 281-282. Al mismo efecto: Langle Rubio, *op. cit.*, pág. 161. R. Uría, *Derecho Mercantil*, 11ma ed., Madrid, Imp. Aguirre, 1976, págs. 480-481; F. Sánchez Calero, *op. cit.*, págs. 386-387; F. Sánchez Calero, *Los vicios ocultos y el ejercicio de las acciones que de ellos derivan en la compraventa mercantil*, 21 Rev. Der. Mercantil 447, 463-464, 467 *et seq.* (1956); F. Sánchez Calero, *Denuncia de los vicios y examen de la cosa en la compraventa mercantil*, 12 An. Der. Civ. 1191, 1193 *et seq.* (1959). Gay de Montellá, *op. cit.*, pág. 209, es el único autor que hemos hallado favorecedor de una tesis distinta, mas ésta se apoya en el Art. 2.127 de la Ley de Enjuiciamiento Civil.

▮ Conforme la doctrina mayoritaria citada, el término de treinta días representa un plazo de denuncia, mas este plazo es de caducidad o decadencia. La denuncia no tiene que cumplir requisito alguno de forma, pero debe hacerse indefectiblemente dentro de los treinta días siguientes a la entrega.[4] Si se efectúa la denuncia a tiempo, el plazo prescriptivo para deducir la acción judicial es el de seis meses dispuesto por el Código Civil para las acciones edilicias.[5]

Adoptamos estas normas para la interpretación del Art. 260 de nuestro Código de Comercio, copia del Art. 342 español que las produjo. No se nos ha demostrado que la seguridad del tráfico mercantil en Puerto Rico, los usos de la plaza, las reglas de otras jurisdicciones civilistas u otros valores o realidades, exijan una conclusión distinta. Por el

---

[4] El significado del término "entrega" no está ante la consideración del tribunal, como tampoco el problema de las compraventas sucesivas. Sobre estos particulares, véase: J. Garrigues, *Curso de Derecho Mercantil*, 7ma ed. rev., Madrid, Imp. Aguirre, 1979, T. 2, pág. 81.

[5] Antes de la aprobación del Código Civil español, el plazo prescriptivo para la acción redhibitoria era el de seis meses, mas la acción estimatoria no prescribía hasta pasado el año. Fue precisamente el Código de Comercio de 1829 el que unificó por primera vez el término, dentro del ámbito mercantil, en seis meses a partir del descubrimiento del vicio (ahora es desde la entrega, Art. 1379 (31 L.P.R.A. sec. 3847)). P. González Huebra, *Curso de Derecho Mercantil*, 3ra ed., Madrid, Lib. de Sánchez, 1867, págs. 249-250.

contrario, otras jurisdicciones civilistas rehuyen fijar tajantemente un plazo tan corto como el de treinta días a partir de la entrega, como término fatal para el ejercicio de la acción judicial en estos casos. Desde comienzos del siglo XIX en Francia, el Código Civil (Art. 1648; el Código de Comercio guarda silencio sobre el particular) dispone que el plazo debe ser "breve". Los tribunales fijan el término, en ausencia de convenio de las partes o uso del lugar, según las circunstancias específicas de cada caso. *Encyclopédie Dalloz*, Paris, T. VII, 1976, *Vente (Obligations du vendeur)*, pár. 505. El plazo varía considerablemente, aunque se trate de la misma clase de mercancía. En el caso de los automóviles, por ejemplo, términos de un año, veinte meses y aun dos años se han considerado comprendidos dentro de la frase "breve plazo". Pár. 506. Distinto al derecho español, el término no comienza a contar desde la entrega de la cosa, sino del descubrimiento del vicio. Pár. 508

En Italia, se fija un plazo de denuncia de ocho días, pero a partir del descubrimiento del vicio. La acción judicial prescribe al año. Greco y Cottino, *op. cit.*, págs. 232–238. En Portugal, el plazo de denuncia es de treinta días a partir del conocimiento del defecto. La acción judicial tiene que interponerse dentro de los seis meses siguientes a la entrega. F. Andrade Pires De Lima y J. De Matos Antunes Varela, *Código Civil Anotado*, Coímbra, Coímbra Ed., 1968, Vol. II, Art. 916, pág. 159. En Suiza, el comprador debe avisar al vendedor sin tardanza después de descubrir el defecto. La acción judicial prescribe al año de la entrega. Scyboz y Gilliéron, *Code Civil Suisse et Code des Obligations*, Lausanne, Ed. Payot Lausanne, 1972, Arts. 201 y 210 del *Code des Obligations.*

▉▉▉▉▉ Un número de casos en Puerto Rico permite en situaciones análogas a la presente, que el comprador recobre, aunque incumpla con los plazos de los Arts. 254 y 260 del Código de Comercio. *Booth Pack. Co.* v. *Sobrino y Hno.*, 34 D.P.R. 15 (1925); *Bay Shoe Co.* v. *Muñiz*, 43 D.P.R. 352

(1932); *Díaz* v. *Viejo*, 54 D.P.R. 825 (1939). El argumento empleado en estas sentencias fue que, por servirse mercancía inidónea o de calidad inferior, se trataba de contratos sin causa que en momento alguno obligaron al comprador. Esta teoría, en la forma expuesta, tiene un efecto devastador, ya que enerva los Arts. 254 y 260 del Código de Comercio. La teoría, para la cual no hemos hallado autoridad alguna que la apoye, se funda a todas luces en una visión equivocada de la causa y los efectos de su ausencia en situaciones como la actual. Según señala Manresa, no debe confundirse el concepto de causa con la infracción de lo pactado. J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, págs. 621–622. La constatación de un vicio oculto anula la causa, pero a lo que esto da lugar es a las acciones de saneamiento, no a que el comprador quede libre de incumplir los requisitos de éstas. Manresa, *op. cit.*, T. X, Vol. 1, 1969, pág. 272. No puede esquivarse el plazo de denuncia exigido por el Art. 260 cuando existan vicios internos, mediante el señalamiento especioso de que, debido a la infracción representada por ellos, se ha desplomado la causa. Son tales vicios y tal desplome los que precisamente activan el Art. 260 del Código de Comercio. Se revocan *pro tanto Booth Pack. Co., Bay Shoe Co.* y *Díaz*, supra, en lo que respecta a este particular.

Por las razones expuestas, *se confirmará la sentencia recurrida.*

El Juez Asociado Señor Dávila no intervino.