# 2006 DTA 98

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN
PANEL V - SUSTITUTO**

CARLOS JOSÉ ALVARADO H/N/C MEGA CELLULARS
Demandante-Recurrido

v.

CELLULAR ONE DE PUERTO RICO, INC.; COMPAÑÍA ASEGURADORA
DE LA "*A*" A LA "*Z*"; FULANO DE TAL; MENGANO DE TAL
Demandados-Peticionarios/Demandantes Contra Terceros Demandantes

v.

QUALITY ONE WIRELESS; COMPAÑÍA ASEGURADORA FULANO DE TAL;
JOHN DOE; JANE DOE
Terceros Demandados-Recurridos

Núm. KLCE-2006-00850

San Juan, Puerto Rico, a 12 de julio de 2006

Panel integrado por su Presidente, el Juez Rivera Martínez,
y los Jueces Aponte Hernández y Morales Rodríguez

Morales Rodríguez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 18 de mayo de 2000, Cellular One (hoy Cingular Wireless, en adelante Cingular) le envió una orden a Carlos José Alvarado o Mega Cellular para la compra de rastreadores (*"beepers"*) marca Motorola, modelo Memo Elite Flex. La orden especificaba que fueran 2000 unidades, que se sirvieran individualmente (*"individually packaged"*) y con la programación y manuales en el idioma español. El precio pactado fue $116,000. El vendedor Alvarado le llevó personalmente una unidad de las ordenadas al señor José Luís Rodríguez, empleado de Cingular para que la viera. Éste comprobó que en efecto era la unidad deseada. Pero el 9 de junio de 2000, el vendedor Alvarado entregó 730 unidades que no estaban empacadas individualmente y que venían con la programación y los manuales en el idioma inglés. El 13 de junio, es decir, dentro de cuatro días, Cingular le notificó por teléfono a Alvarado que cancelara la orden. Le envió al día siguiente un documento escrito a mano bajo el título *"change order"* confirmando la cancelación. Allí escribió que la garantía de fábrica de los rastreadores estaba expirada y que las pantallas estaban certificadas como defectuosas por el manufacturero. El vendedor Alvarado se negó a recoger los equipos y demandó inmediatamente a Cingular —dos días después— por incumplimiento de contrato y daños y perjuicios. Cabe notar que esta demanda se presentó el 16 de junio de 2000. Las partes llevan seis años de litigio.

Dentro de ese marco de hechos hay dos controversias. El vendedor Alvarado alega: (1) que el señor

Rodríguez, a nombre de Cingular, una vez vio la muestra presentada, la aceptó y cambió verbalmente las especificaciones de la orden de compra, y (2) que al momento de la entrega, las 730 unidades fueron "*contabilizadas y verificadas*" por el personal de Cingular. Cingular por su parte alega (1) que el señor Rodríguez sólo vio que la muestra coincidía con la marca, el modelo y el empaque individual solicitado, pero que no aceptó cambiar la orden, y (2) su personal sólo firmó la entrega de cuatro cajas las cuales contenían 730 unidades, que no hubo más verificación en el acto del recibo de la mercancía. Cingular presentó una "*Moción de sentencia sumaria parcial*". Allí expuso y solicitó —acompañado declaraciones juradas y documentación pertinente— lo que sigue:

No hay controversia de hechos a los efectos de que el demandante incumplió con sus obligaciones contractuales para con Cingular, permitiendo así a Cingular oponer el pago y resolver el contrato. Ello así, pues el demandante entregó unas unidades de "*beepers*" distintas a las especificaciones del contrato y con vicios ocultos que las hacían inútiles para su uso. Las unidades se entregaron sin empaque individual, con manuales en inglés y con "*software*" en inglés, mientras que las especificaciones del contrato establecían que debían ser entregadas en empaques individuales, con manuales en español y "*software*" en español. Además, los "*beepers*" vinieron con un "*password protection*" que impedía su uso por Cingular y sus clientes, con defectos de fábrica en las pantallas, en "*holsters*" inadecuados que de utilizarse causarían daños serios a los beepers, y sin garantía alguna del manufacturero, pues estaba vencida. Todo lo anterior demuestra que el demandante entregó productos distintos al pactado y con vicios que permitían la resolución del contrato por parte de Cingular.

A esta moción se opuso el vendedor Alvarado. Expuso como controversia: "*Los hechos demuestran que la demandada, luego de comunicarse y/o reunirse con el demandante, aceptó cambiar las especificaciones de la orden de compra original y aceptó las unidades de beepers conforme a las especificaciones y calidad pactadas entre las partes*". La primera alegación —que Cingular aceptara cambiar las especificaciones—, no está contenida entre las alegaciones de la demanda del vendedor Alvarado; la segunda —que Cingular aceptara las unidades de beepers— es la séptima alegación de la demanda. El vendedor Alvarado basó su oposición a la moción solamente en su propia deposición donde declara:

"*P. Entonces cuando usted dice primeramente que se lo confirmara, ¿esa confirmación era por qué, por escrito?*

*R    Esa confirmación era yo venir físicamente a la oficina con una unidad fiel y exacta a la que iba a entregar a él, que él la cotejara, la cual él se fue a la oficina, no se a cuál oficina, obviamente, y habló con quien tenía que hablar, hizo todas las... las gestiones pertinentes para poder certificarme, ya que obviamente, pues yo entonces tenía que incurrir en esa misma... en esos momentos, horas después montarme en un avión para suplirle los equipos porque eran tan y tan y tan necesarios que necesitaban que eso estuviese en la tienda y que inclusive le dije que estaban en bandejas, que era el "software" en inglés, que traían manual en inglés.*

*...*

*P    Sí, sí, no, pero por teléfono, ¿qué fue lo que José Luis le dijo a usted?*

*R    Que no había ningún problema, que se las entregara en bandeja.*

*P    Ajá, que las entregara en bandejas.*

*R    Que no había problemas en que se las entregara el "software" en inglés y manuales en inglés, porque ellos necesitaban cubrir una necesidad, que en esa semana tenían unas pautas en televisión, yo desconozco, o sea, pero que necesitaban tener esas unidades y yo, pues obviamente, como hombre responsable, pues quise venir aquí para entonces poder... (...)*".

El Tribunal de Primera Instancia examinó la moción, la oposición y la réplica. Resolvió que "*en esta etapa no*

*tenemos, en forma clara, toda la verdad sobre los hechos pertinentes"*. Declaró sin lugar la moción de sentencia sumaria parcial. Cingular, inconforme, acude ante nosotros con dos argumentos: (1) que procedía la sentencia sumaria por no estar en controversia el hecho medular del litigio —el incumplimiento de la única orden de compra en récord— y, en la alternativa, (2) que el foro recurrido erró al no especificar los hechos en los que no hay controversia de conformidad con la Regla 36.4 de las de Procedimiento Civil —32 L.P.R.A., Ap. III, R. 36.4— con vistas a la economía procesal. El vendedor Alvarado o Mega Celullar compareció en oposición al *certiorari* mediante un escrito titulado *"Solicitud de desestimación al amparo de la Regla 83(B) del Tribunal de Apelaciones"*.

Este caso cae de pleno derecho bajo el régimen del Código de Comercio. Independientemente de las alegaciones de Cingular ante nosotros, se plantean aquí dos asuntos de derecho mercantil y uno de carácter procesal: (1) si el acuerdo verbal sobre el cambio que alega el vendedor Alvarado, por sí sólo, establece una base contractual suficiente sobre la que fundar su demanda, (2) si la presentación de la muestra es causa suficiente para obligar a Cingular a aceptar las condiciones de la mercancía entregada, y (3) si las conclusiones al respecto bastan para dictar la sentencia sumaria parcial. En ese orden, los atenderemos.

## I

Sobre el primer asunto, en *Vila & Hnos. Inc. vs. Owens Ill. de P.R.,* 117 D.P.R. 825, 832 (1986), el Tribunal Supremo resolvió que es posible hacer un contrato mercantil verbal. Pero hay una grave dificultad: para exigir su ejecución no bastan meros testimonios. La decisión se basó en el Art. 82 del Código de Comercio, 10 L.P.R.A., sec. 1302, y la doctrina científica que lo interpreta. Dice el Tribunal Supremo:

*"La contratación mercantil, al igual que la civil, permite libertad de forma. [Citas omitidas]. El Art. 82 expresamente consagra ese principio y el Art. 83 dispone las excepciones a esa norma general. Sin embargo, el Art. 82 tiene una limitación de carácter probatorio que afecta el principio de libertad de forma. [Citas omitidas]. Este artículo dispone en parte: "La declaración de testigos no será por sí sola bastante para probar la existencia de un contrato, cuya cuantía exceda de trescientos dólares, a no concurrir con alguna otra prueba". Este artículo se basa en la desconfianza del legislador con la prueba testifical en este tipo de asunto, la contratación mercantil. (...) [T]ambién trata de fomentar la seguridad en el tráfico comercial mediante la coacción hacia la forma."* (Énfasis nuestro)

En su oposición a la moción de sentencia sumaria parcial, el vendedor Alvarado alegó un cambio verbal de la orden de compra. La orden era por $116,000 por lo que —al exceder los $300—, le aplica la citada provisión del Art. 82. Sin embargo, Alvarado sólo presentó su propio testimonio en deposición. Tenía que presentar cualquier otra prueba *"distinta a la testifical"* —*Vila & Hnos., supra*, página 832— para demostrar la existencia de la obligación cuyo cumplimiento demandaba. Quedó pues sin controvertir, según lo manda la ley, un hecho medular de la moción de sentencia sumaria parcial: que hubo una orden de compra que establecía la obligación entre las partes con especificación de producto, cantidad y calidad y que esa orden no fue cumplida según sus términos.

## II

En segundo lugar nos corresponde estudiar si el hecho de que el señor Rodríguez aceptara la muestra que le llevó el vendedor Alvarado hace una diferencia con relación a los rigores del citado Art. 82. Es éste también un asunto en el que el derecho mercantil contiene normas codificadas específicas. Son dos, una que aplica a este caso, y la otra que no aplica.

De entrada, cabe descartar la aplicación del Art. 245 del Código de Comercio, 10 L.P.R.A., sec. 1703, que trata de las ventas sobre muestras. Ese artículo, en lo que aquí respecta, aplica a la compraventa de *"géneros"* de bienes de *"determinada calidad conocida en el comercio"*. Nos explica Manuel Broseta Pont, *Manual de derecho mercantil,* Tecnos, 1987, página 409, que la venta sobre muestras *"se presenta cuando el comprador y el vendedor convienen en vender y comprar cosas genéricas, cuya determinación o individualización se hace*

*teniendo aquél a la vista una muestra objeto del contrato.*" En el caso ante nuestra consideración, el vendedor Alvarado y Cingular no convinieron en vender y comprar un rastreador genérico. Era uno de la marca Motorola, modelo Memo Elite Flex. No había nada que comparar. El acuerdo fue que se le supliera a Cingular ese modelo y no uno comparable.

La segunda disposición del Código de Comercio que sí es aplicable al caso ante nuestra consideración es el Art. 254, 10 L.P.R.A., sec. 1712. Lo cita el vendedor Alvarado y contempla los hechos específicos de su caso:

*"El comprador que, al tiempo de recibir las mercaderías, las examinare a su contento, no tendrá acción para repetir contra el vendedor, alegando vicio o defecto de cantidad o calidad en las mercaderías.*

*El comprador **tendrá el derecho de repetir contra el vendedor por defecto en la cantidad o calidad de las mercaderías recibidas enfardadas o embaladas, siempre que ejercite su acción dentro de los cuatro días** siguientes al de su recibo, y no proceda la avería de caso fortuito, vicio propio de la cosa, o fraude.*

*En estos casos, **podrá el comprador optar por la rescisión del contrato** o por su cumplimento, con arreglo a lo convenido, pero siempre con la indemnización de los perjuicios que se le hubieran causado por los defectos o faltas.*

*El vendedor podrá evitar esta reclamación **exigiendo, en el acto de la entrega, que se haga el reconocimiento, en cuanto a cantidad y calidad, a contento del comprador.*" (Énfasis nuestro).

Está claro que esa disposición establece una norma general: si al momento de recibir las mercaderías el comprador las examina, no tendrá acción contra el vendedor por los defectos con que vengan. Pero si las mercaderías vienen "*enfardadas o embaladas*", se le concede al comprador un término de cuatro días para examinarlas; si descubre defectos de cantidad o calidad en ese corto término puede rescindir el contrato. La única forma que tiene el vendedor de evitar esa acción es exigiendo un reconocimiento de cantidad y calidad al momento de la entrega, "*a contento del comprador*".

Cabe hacer dos comentarios sobre este artículo. Como sucede en el caso del citado Art. 82, el Art. 254 trata de un régimen de constataciones impuesto por la desconfianza del legislador y en aras de la seguridad en el tráfico comercial. En el caso del Art. 254 se requiere un reconocimiento expreso por parte del comprador de su aceptación o contento con la cantidad y la calidad de la entrega; si no lo exige el vendedor y no consta haberse hecho, el comprador tiene cuatro días para "*denunciar*" la transacción; no tiene que incoar demanda en ese término, *Julsrud v. Peche de P.R. Inc.,* 115 D.P.R. 18, 26 (1983). Esos cuatro días aplican a defectos manifiestos, pues el Código de Comercio contempla también los "*vicios internos*" para los que concede un término de treinta días, Art. 260, 10 L.P.R.A., sec. 1718. Explica *Broseta Pont, supra,* a la pág. 405:

*"[E]l defecto de calidad se presenta cuando la cosa comprada no posee una determinada calidad que debía poseer por haberse pactado expresamente, **o que aun no habiéndose convenido es normal que concurra en la cosa adquirida** (p. Ej.: UHF en un televisor). El vicio existe cuando poseyendo la cosa comprada las calidades o características pactadas o usuales, es defectuoso su funcionamiento o su utilización (p. Ej.: UHF existe, pero no funciona adecuadamente). El defecto de cantidad concurre cuando el vendedor entrega menos unidades de las pactadas. (...)*

*El Código de Comercio establece un régimen jurídico para los vicios manifiestos y otro para los ocultos. Para los vicios o defectos manifiestos, **en el acto de la entrega o en la recepción material de las mercancías por el comprador (no en el momento de su simple puesta a disposición), el vendedor puede exigir su examen, de modo que si el comprador manifiesta que son de recibo, perderá el derecho a exigir posteriormente la garantía por aquellos vicios o defectos; si al examinarlos manifestare reservas, o si a su recepción no verificara el***

*examen por no serle exigido, el comprador dispondrá de un plazo de cuatro días contados desde la recepción, para formular la correspondiente reclamación (Art. 336 [Art. 254 nuestro]). Por el contrario, para los vicios o defectos ocultos, el comprador dispone de treinta días para examinar y reclamar del vendedor la garantía por los vicios o defectos de las mercancías (Art. 342 [Art. 260 nuestro]); derecho que, como es natural, no perderá, aunque hubiera manifestado su contento al recibirlas, pues al estar ocultos los vicios o defectos, es verosímil pensar que no pudo descubrirlos en el momento de su recepción."* (Énfasis nuestro).

Dentro de cuatro días después de la entrega de los rastreadores, Cingular denunció al vendedor Alvarado dos defectos: la expiración de la garantía de fábrica y pantallas halladas defectuosas por el fabricante. Para eximirse de la responsabilidad de responder por esos defectos, el vendedor Alvarado hubiese tenido que presentar prueba de que Cingular aceptó la mercancía aun con ellos. No lo hizo. Su única prueba en oposición —que es su propia deposición—, no establece que él le hubiese requerido a Cingular, al momento de la entrega de los rastreadores, un reconocimiento en cuanto a calidad y cantidad de los productos entregados; tampoco declara que esa verificación se hubiese hecho a contento del comprador. Sólo nos remite al acuerdo verbal de cambio de orden.

Cingular proveyó declaraciones juradas donde establece que sólo recibió cuatro cajas con 730 unidades. Es decir, la mercancía estaba embalada, cubierta. La pasó entonces a sus inspectores quienes declaran bajo juramento los defectos hallados. Alvarado hubiese tenido que declarar específicamente que la mercancía no estaba embalada; o que las cajas fueron abiertas y examinadas hasta ser aceptadas de conformidad por Cingular al momento de la entrega. Sólo así podía salvarse de su responsabilidad de garantizar la mercancía contra vicios.

Es un principio del derecho mercantil la garantía contra vicios *"salvo pacto en contrario"*, Art. 263, 10 L.P.R.A., sec. 1721. El vendedor Alvarado quiso probar el pacto en contrario. Insiste ante nosotros —en su alegato responsivo— en su teoría, ya discutida, de que Cingular, luego de aceptar la muestra del rastreador, cambió verbalmente las especificaciones de la orden de compra. Pero es que si eso fuera cierto, aún así Cingular tenía la prerrogativa de examinar la entrega de lo que pactó para determinar vicios. El vendedor Alvarado hubiese tenido que demostrar que se aceptaron las mercancías con esos dos defectos por estar entre las nuevas especificaciones; o que el señor Rodríguez se percatara de que los tuviera y aún así las aceptara; o que él exigiera que los reconociera *"a contento del comprador"* y éste lo hiciera.

Cingular denunció los vicios de calidad en la entrega dentro de los cuatro días y lo confirmó por medio de una nota al día siguiente. Ese hecho no ha sido controvertido. No tenemos que analizar, pues, si los vicios denunciados eran ocultos o manifiestos, pues se cumplió con el término corto aplicable a los primeros. Cingular denunció que las mercancías tenían vencida la garantía de fábrica; también que las pantallas habían sido identificadas como defectuosas por el mismo manufacturero. Es obvio que se trata de *"una anormalidad o imperfección de la cosa misma (...) perjudicial para el uso ordinario de ella [la pantalla defectuosa] o como inferior a su natural estado, tenido en cuenta al contratar [la garantía de fábrica]"*. *Julsrud, supra,* a la pág. 23. Eran defectos o vicios denunciables.

El Art. 254 establece la consecuencia de la denuncia oportuna de los defectos descubiertos. Nos ilustra *Broseta Pont*, a la pág. 406:

*"[C]onstatada la presencia de la prestación defectuosa, ¿qué derechos posee el comprador para ver reparado el daño que le produce la recepción de cosas que adolezcan de vicios o de defectos? **Este podrá elegir entre solicitar la rescisión del contrato, o su cumplimiento fiel** con arreglo a lo convenido, y en ambos casos con indemnización de los perjuicios que por ello se le hubieren causado (Art. 336 [Art. 254 nuestro]). La sent. de 27-III-1974 considera como cálculo de los daños y perjuicios producidos por el incumplimiento del vendedor, la diferencia entre el precio pactado y el precio corriente en el mercado, el cual era superior."*

## III

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 36.3, establece el criterio para dictar sentencia sumaria:

*"La sentencia solicitada se dictará inmediatamente si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial **en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria** a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes."* (Énfasis nuestro).

En su más reciente expresión al respecto —*Ramírez Quiñones v. Soto Padilla*, resuelto el 14 de junio 2006, **2006 JTS 109**, 168 DPR _____ (2006)—, nos ilustra el Tribunal Supremo:

*"Al evaluar una solicitud de sentencia sumaria, o al revisar su adjudicación, la evidencia a utilizarse consiste de las declaraciones juradas y prueba documental admisible que obren en autos, así como las alegaciones no controvertidas del demandante. Los hechos que surjan sin controversia de dicha evidencia se consideran probados; los demás se consideran sólo para justificar la decisión de no dictar sentencia sumaria. Evaluada así la evidencia, el tribunal resolverá si procede dictar sentencia sumaria y, en tal caso, si la sentencia debe favorecer a la parte promovente o la opositora. Cabe recordar que se trata de un mecanismo discrecional y que ciertos litigios suelen ser inapropiados para el mismo, entre ellos, los que exigen determinaciones de hechos sobre la intención de las partes."*

Es lo que hemos hecho en este caso. Examinamos las alegaciones de la demanda, las declaraciones juradas, la prueba documental admisible y las alegaciones no controvertidas del demandante. No hallamos prueba alguna, no testifical, del cambio de contrato que alega el demandante como justificación de la entrega de mercancía en cantidad y calidad distinta de la ordenada. Como el Art. 82 del Código de Comercio no permite demostrar los acuerdos mercantiles verbales mediante prueba testifical, podemos concluir que no hay controversia sostenible en juicio sobre un hecho material o medular o central como ése.

La deposición presentada era insuficiente como prueba en el juicio y también en oposición a una moción de sentencia sumaria. Sobre esto pautó el Tribunal Supremo en *Medina v. M. S. & D. Química P.R. Inc.*, 135 D.P.R. 716, 734:

*"[P]ara derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas: presentar con su oposición **una prueba admisible en evidencia o una prueba que pueda convertirse en admisible** —aunque de momento no lo sea— o que de lugar a una prueba admisible que demuestre que existe evidencia para probar los elementos esenciales de su caso; que hay prueba en el récord que puede convertirse en una prueba admisible y que derrotaría la contención de insuficiencia del promovente; **que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado**, o que éste, por su naturaleza, no es un caso que conviene que se resuelva por el mecanismo expedito de la sentencia samaria."* (Énfasis nuestro).

Ninguna de esas cosas fue planteada por el vendedor Alvarado. Su oposición se basa simple y llanamente en su testimonio sobre un acuerdo verbal que no es admisible en evidencia ni puede convertirse en admisible. A estas alturas, después de seis años de litigio, no cabe argüir que su descubrimiento de prueba para responder a la moción sentencia sumaria sea inadecuado.

Faltaría ver si hay controversia sobre un reconocimiento "*a contento del comprador*" de la mercancía entregada. En este caso tenemos solamente la alegación en la demanda de que las mercaderías en cuestión

*"fueron contabilizadas y verificadas por los empleados de la demandada"*. Al oponerse a la moción de sentencia sumaria, el vendedor Alvarado no contestó con su propia deposición ni con otras declaraciones, las declaraciones juradas de las personas responsables de recibir la mercancía en cuestión. Todas esas declaraciones apuntan a un proceso regular de entrega, sin más. El vendedor Alavardo no controvirtió, con su deposición u otra prueba: que el personal de Cingular recibió cuatro cajas de rastreadores; que nada más ocurrió hasta cuatro días después cuando Cingular le notificó por teléfono que cancelara la orden; ni que Cingular rechazó la mercancía por estar expirada la garantía y por tener defectos en la pantalla identificados por el fabricante. La única respuesta en oposición a la Sentencia Sumaria presentada por el vendedor Alvarado —sustentada sólo con su testimonio en deposición—, es que hubiese habido un cambio verbal de la orden. Pero eso —lo hemos establecido a la luz del Art. 82—, supondría reconocer un contrato verbal; y requiere corroboración por vías no testimoniales. Éstas no se han provisto. El resto son meras alegaciones que no están sustentadas tampoco con prueba testimonial.

Dispone la Regla 36.5 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 36.5:

*"Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria **no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente**, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará en su contra la sentencia sumaria si procediere."* (Énfasis nuestro).

Cingular, como promovente de la moción de sentencia sumaria parcial, *"ha establecido su derecho con claridad"* y, por lo que hemos visto, *"queda demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba, pues hay que recordar que el tribunal resolverá lo que proceda en derecho y no necesariamente lo que se le solicita"*. *Medina v. M. S. & D. Química P.R. Inc., supra.*

En virtud de lo expuesto, se expide el auto solicitado, se revoca la Resolución recurrida y se declara con lugar la moción de sentencia sumaria parcial en cuanto solicita la desestimación de la demanda y la continuación del proceso de la reconvención.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones