GUADALUPE, SABINA y FRANCISCO McCORMICK ANAYA, demandantes y apelantes, *v.* MARÍA McCORMICK VDA. DE SERRANO ET ALS., demandados y apelados.

Núm. 7044.—*Sometido:* Febrero 3, 1937. *Resuelto:* Febrero 15, 1938.

* NOTA:  Véase el prefacio.

692

*L. Muñoz Morales* y *G. Cruzado Silva,* abogados de los apelantes; *C. H. Juliá* y *H. Torres Solá,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

En abril de 1927 Harry A. McCormick otorgó testamento. Luego de hacer constar que no tenía hijos naturales u otros descendientes o ascendientes legítimos, designó como herederos a un hermano y a ciertas hermanas y sobrinos. Confirió a sus albaceas, que designó en el testamento, amplios y exclusivos poderes para representar a la sucesión en los recursos por ésta instituídos o iniciados por otros, para celebrar transacciones y compromisos y para enajenar o gravar los bienes. Fué su voluntad que donde no existieren facultades expresas conferidas en su testamento para determinada gestión o acto de los albaceas, tales facultades debían enten-

derse y quedaban acordadas con el fin de llevar a cabo su voluntad. Los albaceas fueron exonerados de la necesidad de prestar fianza para garantizar el fiel cumplimiento de sus deberes, de la necesidad de rendir cuentas de su administración o de los bienes de que dispusieren y supeditar sus actos a otras restricciones que no constan en el testamento.

En un documento notarial otorgado el 17 de diciembre de 1928 al efecto de formalizar el pago de derechos hereditarios, comparecieron, de una parte doña Dolores Alcaide y Baiz Vda. de McCormick y Antonio S. Alcaide y Baiz (en concepto de albacea testamentario de Harry A. McCormick, fallecido) y de otra parte Francisco, Sabina y Guadalupe Anaya. Más específicamente, las partes hicieron constar: que doña Dolores Alcaide y Baiz comparecía como viuda de Harry A. McCormick, por su interés en la liquidación de la sociedad conyugal de gananciales y como heredera forzosa en cuanto a la cuota vidual en usufructo que le corresponde por ministerio de la ley; que Antonio Alcaide y Baiz comparecía en concepto de albacea testamentario de Harry McCormick; y que Francisco, Sabina y Guadalupe Anaya comparecían como hijos naturales del referido Harry A. McCormick, convencidos de que tenían el derecho de que se les reconociese como tales. Entonces en la escritura se hace constar la muerte de Harry A. McCormick y se expresa substancialmente el contenido del testamento, incluyendo las facultades conferidas a los albaceas. Entonces aparece la siguiente cláusula:

"*Tercero:* Que conforme a documento extrajudicial de nueve de noviembre de mil novecientos veintisiete, suscrito ante el Notario, vecino de esta ciudad, don Luis Muñoz Morales, *affidavit* número dos mil ciento setentisiete, don Antonio S. Alcaide, en su carácter de albacea testamentario del finado Harry A. McCormick, en representación de la herencia (*estate*), se comprometió a entregarle a cada uno, de los tres hermanos Anaya la suma de TRECE MIL DÓLARES en dinero efectivo, y DIECISIETE MIL DÓLARES en acciones de la Compañía Ferroviaria de Puerto Rico, por un valor nominal de cien dólares cada una, haciendo un total para los tres interesados de TREINTINUEVE MIL

DÓLARES en efectivo, y CINCUENTA Y UN MIL DÓLARES en las mencionadas acciones; aceptando los tres hermanos Guadalupe, Sabina y Francisco Anaya la cantidad indicada para cada uno, como saldo y liquidación definitiva de cualquier derecho o acción que por cualquier concepto o título pudieran tener en la herencia del finado Harry A. McCormick, y renunciando cualquier acción que para ese fin pudieran intentar, por considerar que la indicada cantidad cubre el importe de cualquier derecho que ellos pudieran obtener. Quedó estipulado en el mismo documento que las expresadas cantidades serían entregadas y pagadas a los hermanos Anaya en la fecha que más adelante se fijara de acuerdo por ambas partes, y según la liquidación de la testamentaría, entendiéndose que sobre tales cantidades no se hará descuento alguno, y que se pagarían de las primeras liquidaciones que se efectuasen.''

De dicha escritura notarial también aparece que con anterioridad a la fecha de la misma, Sabina y Guadalupe Anaya habían dispuesto de parte de lo que tenían que recibir bajo el contrato escrito de 9 de noviembre de 1927. Después de una ratificación expresa del convenio por doña Dolores Alcaide y Baiz y de una modificación del mismo, mediante la sustitución de parte del pago en efectivo originalmente convenido por ciertos inmuebles, pagarés y acciones de corporaciones, y luego de deducir las sumas previamente asignadas por Sabina y Guadalupe Anaya, el albacea y doña Dolores Alcaide adjudicaron, transfirieron y entregaron a Francisco, Sabina y Guadalupe Anaya una parcela de terreno conocida por ''Malezosas'' y otra finca que, junto con un pago en efectivo de $15,000, ascendían en total a $90,000. Francisco, Sabina y Guadalupe Anaya se dieron por pagados y totalmente satisfechos de cuantos derechos tenían y podían tener en la herencia de Harry A. McCormick y se obligaron a no pedir aumento ni a reclamar cosa ni suma alguna. Doña Dolores y Antonio S. Alcaide se obligaron a otorgar y a que se otorgaran cuantas ratificaciones, escrituras y documentos fueran necesarios al efecto de que Francisco, Sabina y Guadalupe Anaya inscribieran en el registro de la propiedad la finca ''Malezosas'' que se les había adjudicado. La escritura de noviembre 9, 1927, no está ante nos.

Los albaceas designados en el testamento también fueron nombrados contadores partidores, con plenos poderes para dividir y distribuir la herencia. En diciembre de 1929 los herederos testamentarios, con excepción de uno o dos que habían muerto en el ínterin, y los causahabientes de aquéllos que habían fallecido, entablaron demanda contra los albaceas y contadores partidores para la división y distribución de la herencia. Los albaceas y contadores partidores contestaron admitiendo la mayor parte de los hechos, sujeto a ciertas explicaciones, correcciones y alegaciones afirmativas. Los demandantes a su vez admitieron los hechos aducidos en la contestación y solicitaron sentencia. El juez de distrito, luego de exponer en su totalidad los poderes conferidos por el testador a los albaceas y contadores partidores, y luego de deducir la suma pagada por los albaceas a los hijos naturales, y otras partidas, dijo que aún quedaban en manos de los albaceas y contadores partidores unos $65,000 en efectivo y bienes, para ser distribuídos entre los demandantes. Indicó entonces detalladamente la forma en que este remanente debía ser distribuído y ordenó se otorgara la correspondiente escritura y se registrara sentencia de conformidad con sus conclusiones. Se dictó sentencia de acuerdo el 15 de febrero de 1930, y el 28 de febrero uno de los albaceas y los demandantes en el recurso que acabamos de mencionar otorgaron una escritura pública, de conformidad con los términos de dicha sentencia. Por esta escritura se efectuó la partición del remanente de la herencia, valorado en unos $65,000, enteramente de acuerdo con las conclusiones y sentencia de la corte, incluyendo la rebaja de dinero y bienes ascendentes a $90,000, previamente adjudicados y entregados a los hijos naturales.

En abril de 1930 Guadalupe, Sabina y Francisco Anaya, demandantes en un pleito de filiación, fueron declarados hijos naturales reconocidos de Harry A. McCormick, con derecho a usar su apellido y a heredarle como herederos forzosos de

su padre en la forma y proporción que determina el Código Civil vigente.

En mayo de 1931 Guadalupe, Sabina y Francisco McCormick y Anaya instaron el presente recurso, en el cual solicitaron sentencia al efecto de que: la institución de herederos hecha en el testamento era nula, sin perjuicio de las mandas y legados; que como resultado de tal nulidad Harry A. McCormick falleció ab intestato y sus bienes deben adjudicarse según las reglas de la sucesión legítima, a excepción de los legados en la parte que no sean inoficiosos; que los demandantes Guadalupe, Sabina y Francisco McCormick y Anaya son los únicos y universales herederos ab intestato de la totalidad de los bienes de la herencia de su finado padre Harry A. McCormick, salvo la parte que en usufructo corresponda al cónyuge viudo y los legados dispuestos, en cuanto no resulten inoficiosos; se condene a los demandados a que dejen libres y a disposición de los demandantes los inmuebles y derechos reales que se describen en la demanda y todos los demás bienes y valores, de cualquier clase que sean, que constituyan la herencia del causante, con costas, gastos y honorarios de abogado. El juez de distrito, luego de celebrarse un juicio sobre los méritos, resolvió que los demandantes estaban "estopped" por razón del contrato de transacción y por haber aceptado y recibido los beneficios que les correspondían bajo tal contrato. Incidentalmente dijo *arguendo* que los demandantes habían recibido cuanto tenían derecho a recibir. Entonces declaró sin lugar la demanda.

Los primeros cuatro señalamientos son, substancialmente, que la corte de distrito cometió error al desconocer el carácter de herederos forzosos que ostentan los demandantes, que los herederos forzosos fueron preteridos en el testamento del causante, que la preterición de estos herederos forzosos anula la institución de herederos y abre la sucesión intestada y al sostener que los demandantes recibieron todo cuanto pudiera corresponderles por concepto de herencia del causante.

El alegato de los apelantes deja de convencernos de que los errores aquí señalados, de haberse cometido por el juez de distrito, justificarían la revocación, a menos que el juez también se equivocara en la forma indicada en el quinto señalamiento.

■■■ El quinto señalamiento es que la corte de distrito cometió error al resolver que los demandantes estaban impedidos (*estopped*) por haber aceptado la transacción.

La médula del argumento es que la verdadera causa (*consideration*) para haber convenido en pagar cierta suma especificada en el contrato de noviembre 9, 1927, lo fué un pleito de filiación pendiente, y el contrato era, por tanto, nulo por ser contrario a la moral pública (art. 1227 del Código Civil) ; que la verdadera causa para la ratificación del contrato anterior y para el pago de $90,000 de acuerdo con los términos de la escritura notarial otorgada el 17 de diciembre de 1928, o sea, unos ocho meses después de radicarse el pleito de filiación, fué la renuncia o desistimiento del pleito de filiación, es decir, del estado civil de los Anaya (sección 1713 del Código Civil) ; que la escritura de diciembre de 1928 no era una liquidación de herencia y adjudicación a los herederos preteridos de su participación en la herencia (2 Morell y Terry 443; Resoluciones de la Dirección General de los Registros, de octubre 30, 1896, mayo 30, 1898, y junio 30, 1910) ; que los herederos instituídos no fueron parte en la escritura ni eran los herederos forzosos; que no hubo convenio entre los herederos instituídos y los herederos forzosos; que el hecho de que los herederos instituídos no fueran también herederos forzosos hubiera bastado para anular el convenio; que a fin de efectuar una partición válida era necesario que la porción correspondiente a los herederos forzosos hubiera sido entregada o adjudicada a ellos sobre la base de una institución de herederos nula; que si los herederos instituídos eran herederos forzosos, ellos hubieran tenido un derecho indubitable a la herencia como herederos intestados, aun si se anulaba la institución; que al admitirse los herederos pre-

teridos, la única diferencia sería respecto a la parte proporcional de la herencia que correspondería a los herederos instituídos y no respecto a sus derechos hereditarios; que si los herederos instituídos no son herederos forzosos, ellos dejaron de ser tales herederos instituídos al anularse la institución, y no son herederos ab intestato; que por otra parte la ley sustituye la voluntad del testador y los herederos preteridos se convierten en los únicos herederos legales; que el contenido del documento revela el objeto o materia que sirvió de base a la transacción, no como derecho de acreedores ni como un derecho de usufructo, sino como derecho hereditario de una de las personas con interés en la propiedad, en una parte de la herencia, que fué entregada; que las reglas generales que rigen los contratos de transacción deben estar subordinadas a las reglas especiales que rigen la cuestión de sucesiones, derechos hereditarios y partición de herencias; que si se considera por sí solo el convenio de noviembre 9 de 1927, el mismo era un pacto sin causa alguna o de lo contrario sería un pacto basado en una causa ilícita; que la escritura de diciembre 17, 1928, considerada en conexión con el pacto anterior (que carecía de causa) fué una ratificación de dicho convenio; que si la escritura de diciembre 17, 1928, es considerada separadamente, ella puede ser tenida, bien como equivalente a la partición de una herencia y a la renuncia de derechos hereditarios, o como una transacción corriente; que los contratos "sin causa, o con causa ilícita, no producen efecto alguno" (artículo 1227 del Código Civil); que los contratos de noviembre 9 de 1927 y diciembre 17 de 1928 eran nulos por falta de causa; que, de existir causa, ésta era nula por ser contraria a la moral pública (*Antongiorgi* v. *Antongiorgi*, 28 D.P.R. 869; *Pagán* v. *Sucn. Padilla*, 42 D.P.R. 968); que si la causa en el contrato de diciembre 27 de 1928 tan sólo era la relativa al derecho hereditario de los hijos naturales, subsiste la cuestión respecto a si la transacción equivalió a una partición de la herencia o a una transacción de derechos hereditarios; que de ser una partición, ésta no se

efectuó legalmente, porque todas aquellas personas interesadas en la herencia no intervinieron en la misma y porque la partición no fué hecha por los contadores partidores (artículos 1018 del Código Civil, *et seq.*); que de ser meramente una transacción de derechos hereditarios, ella fué ineficaz, toda vez que los herederos testamentarios no intervinieron en la misma (*Muñoz* v. *Registrador,* 41 D.P.R. 676); que la demanda aduce dos causas de acción, primera, una sobre la nulidad del testamento, acerca de la cual los demandantes alegaron ser herederos forzosos del testador y haber sido preteridos en el testamento y solicitan, de conformidad con el artículo 742 del Código Civil, se decrete la nulidad de la institución de herederos, y, segunda, otra causa de acción sobre la declaración de herederos, acerca de la cual, por razón de los hechos alegados como primera causa de acción y como resultado del pronunciamiento relativo a la nulidad del testamento, los demandantes solicitan se abra la sucesión intestada y se decrete que los demandantes son los únicos herederos ab intestato con derecho al todo de la herencia; que, en lo que a la primera causa de acción se refiere, debemos considerar si el convenio de 1928, que los demandados alegan como defensa, implica una transacción que envuelve el estado civil de los demandantes como hijos naturales reconocidos, que es la base del recurso; que de ser una transacción sobre el estado civil de los demandantes para resolver el pleito de filiación, la causa era ilícita y no hubo *estoppel;* que si, por otra parte, la transacción no envolvía el estado civil de los demandantes, éstos podían proseguir su pleito de filiación hasta que se dictara sentencia; que, en una u otra hipótesis, la sentencia de abril 10 de 1930 subsiste como válida y eficaz en todas sus partes y los demandantes son los herederos forzosos del causante; que la súplica basada en la primera causa de acción, no es afectada por el convenio de diciembre 17 de 1928, de ser tal convenio una mera transacción que afecta derechos hereditarios; que, con o sin un convenio sobre la propiedad, con o sin participación hereditaria, con o sin

bienes a ser distribuídos, la naturaleza y el derecho son absolutos e independientes de los demás derechos y representaciones del causante (artículo 599 a 610 del Código Civil); que, ora el convenio de diciembre 17 de 1928 sea válido o no, y no importa cuál pueda ser su alcance sobre la propiedad recibida por los demandantes, esto no es un obstáculo a la primera causa de acción aducida por los demandantes como herederos forzosos preteridos, para solicitar se declare la nulidad de la institución de herederos; que en lo que a la segunda causa de acción relativa a la declaración de herederos se refiere, los demandantes descansan en el hecho de que en ausencia de otros ascendientes o descendientes, y siendo nula la institución de herederos, ellos son los únicos herederos forzosos; que no se planteó la cuestión de *estoppel* respecto a la segunda causa de acción y que no existe razón alguna por la cual no debió dictarse sentencia en favor de los demandantes; que la única diferencia existente entre el presente caso y la decisión de la Corte Suprema de España de junio 17 de 1908 (111 Jurisprudencia Civil 495) es que en esta última el padre, en vida, entregó a su hija natural cierta suma como anticipo de su participación legítima, en consideración de lo cual ella otorgó carta de pago y renuncia de derecho, mientras que en el presente caso la cantidad fué entregada a los demandantes por el albacea, según carta de pago en que también se hizo renuncia de derecho. Véase también la sentencia de la Corte Suprema de España de 27 de febrero de 1909, 113 Jurisprudencia Civil 720, citada por los apelantes.

La única diferencia existente entre el presente caso y el caso resuelto por la Corte Suprema de España el 17 de junio de 1908 es una diferencia importante. El artículo 744 del Código Civil (edición 1930) dispone expresamente:

"Toda renuncia o transacción sobre la *legítima futura entre el que la debe y sus* herederos forzosos es nula, y *éstos* podrán reclamarla *cuando muera* aquél . . ." (Bastardillas nuestras.)

Esta prohibición no fija limitación alguna sobre el poder de los herederos forzosos a renunciar o disponer de su he-

rencia en la forma que lo crean conveniente, una vez muerta la persona de quien heredan, ya sea por transacción o compromiso con los herederos testamentarios o en alguna otra forma. Tampoco fué la transacción en el presente caso contraria a ninguna otra disposición estatutaria que haya sido traída a nuestra consideración, excepción hecha del artículo 1713 del Código Civil (edición de 1930).

En *Ex Parte Santiago et al.* y *El Pueblo,* 21 D.P.R. 377, este Tribunal interpretó el artículo 1713 del Código Civil, adoptó la interpretación dádale por Manresa a los artículos correspondientes del Código Civil Español e indicó la distinción existente entre el estado civil y "las consecuencias económicas o sobre el interés pecuniario que surgen o nacen del estado civil reclamado, como, por ejemplo, sobre los derechos que pudieran tener en la sucesión de su padre." 21 D. P. R. 383. En Ex Parte Santiago los demandantes, que en su mayoría eran menores, y los demandados, uno de los cuales era menor de edad, habían celebrado una transacción, según la cual los demandantes recibieron poco más de la mitad de lo que hubieran percibido si su estado como hijos naturales reconocidos hubiera sido definitivamente establecido en aquel entonces por sentencias finales en los varios pleitos de filiación. Esta corte sostuvo la transacción. En el presente caso los demandantes recibieron algo menos de dos terceras partes de lo que hubieran recibido según sus propios cálculos, si al efectuarse la transacción su estado civil hubiera sido establecido definitivamente. El alegar que ninguno de los demandados era un heredero forzoso no es suficiente para distinguir el caso de autos del de Ex parte Santiago *et al.* y El Pueblo. Si Francisco, Sabina y Guadalupe Anaya hubieran podido celebrar un contrato de transacción válido y obligatorio con un heredero o con los herederos forzosos, no vemos razón alguna por la cual no podían celebrar una transacción igualmente válida y obligatoria con los hermanos y sobrinos instituídos por McCormick como únicos y universales herederos.

██ Enfocando la cuestión desde el punto de vista de la sentencia final dictada en el pleito de filiación, podría admitirse que los Anaya eran los hijos naturales reconocidos de Harry McCormick. Mirando la cuestión desde el punto de vista de las respectivas partes que intervinieron en el contrato de transacción, al tiempo en que el mismo fué celebrado, quizá sería algo más exacto decir que los Anaya (en tanto en cuanto se refería a cualquier base hipotética para celebrar tal convenio) eran o no eran tales hijos reconocidos de McCormick. Los Anaya es de presumirse que tenían en su poder las cartas y fotografías que posteriormente presentaron como prueba en el curso del juicio del caso de filiación. Quizá también tenían la opinión de un perito calígrafo que más tarde declaró en el juicio. Probablemente sabían cuál sería más o menos el testimonio de otros testigos. Los herederos instituídos tenían a su favor la institución de herederos y la manifestación positiva del causante en su testamento de que no tenía hijos naturales ni descendientes o ascendientes. Ambas partes tuvieron que haber sabido que, independientemente de cuál podía ser el estado civil de los Anaya, ellos no podían obtener una determinación judicial sobre la nulidad de la institución de herederos, a menos y hasta que, bien en una acción iniciada para ese fin o en un pleito separado de filiación, establecieran primeramente el hecho de tal estado civil. Sin una declaración judicial al efecto de que la institución de herederos era nula, no podían insistir en su reclamación como. herederos ab intestato. Su única esperanza de entrar en la posesión inmediata de cualquier parte de la herencia descansaba en la posibilidad de un contrato de transacción. El resultado de un pleito de filiación bajo la regla estricta, establecida por este tribunal en los casos más antiguos, sobre la necesidad de que se presentara "prueba fuerte y convincente", considerado en armonía con la manifestación positiva del testador de que no tenía hijos naturales, era necesariamente dudoso. En su consecuencia, los Anaya tuvieron buenos motivos para

considerar que un "pájaro en mano vale más que cientos volando". Los · herederos instituídos, por otra parte, no podían estar seguros de que los Anaya no tendrían éxito en el pleito de filiación que intentaban presentar, en cuyo caso la nulidad del testamento, en lo que a la institución de herederos se refería, se convertiría en un hecho. Por tanto, razonaron indudablemente que "más valía poco que nada". La promesa de pagar $90, 000, y el pago posterior en efectivo y en bienes, era una causa buena y suficiente para la aceptación de la misma por los Anaya en pago total y finiquito de los derechos que ellos hubieran podido tener en la herencia de Harry McCormick, para renunciar cualquier acción que para ese fin pudieran intentar y para prometer no impugnar el testamento. La renuncia por parte de los Anaya de sus derechos hereditarios y de cualquier causa de acción que hubieran podido tener para hacer valer tales derechos, y su promesa de no impugnar el testamento, eran causa suficiente para el pago de los $90,000. Véanse también *Matienzo* v. *González,* 26 D.P.R. 457, y 12 C. J. 322-327, secciones 16, 17 y 18.

■ Por la sentencia dictada en el pleito de filiación Francisco, Sabina y Guadalupe Anaya fueron declarados hijos naturales reconocidos de Harry A. McCormick, con derecho a usar el apellido McCormick y a heredarle como herederos forzosos en la forma y proporción fijadas por el Código Civil. Si la sentencia dictada en el pleito de filiación era o no *res judicata* en lo que se refiere a la defensa de transacción y compromiso levantada aparentemente por primera vez por los demandados en el presente litigio, es cuestión que no parece haber sido suscitada definitivamente en la corte de distrito ni ha sido planteada definitivamente por los apelantes ante este tribunal.

■ Los herederos testamentarios ratificaron y confirmaron el contrato de transacción al aceptar y distribuir entre sí lo que quedó de la herencia, luego de deducir del valor total de la misma los $90, 000 pagados a los hijos naturales

de conformidad con los términos de la transacción. Esta ratificación del contrato de transacción elimina cualquier cuestión relativa a si los herederos testamentarios fueron partícipes en la misma, o si, en ausencia de tal ratificación, hubiesen estado obligados por el contrato de transacción.

Las conclusiones anteriores nos eximen de la necesidad de considerar los señalamientos sexto y séptimo, al efecto de que la corte de distrito cometió error al sostener que para ejercitar esta acción era necesario anular previamente ciertos contratos relacionados en las defensas, así como la sentencia recaída en el pleito iniciado por los herederos testamentarios contra los albaceas y al no mencionar ni resolver las demás cuestiones planteadas en este caso por los demandados.

No hallamos abuso de discreción en la concesión de costas.

*La sentencia apelada debe ser confirmada.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.