# 95 DTA 199

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE ARECIBO Y UTUADO

ISABEL SOBERAL ROMAN, ET ALS
Demandantes-Recurrentes

v.

ANTONIO PEREZ BAYON, ET ALS
Demandados-Recurridos

Núm. KLCE-95-00147

San Juan, Puerto Rico, a 27 de junio de 1995

## TEXTO COMPLETO DE LA SENTENCIA

### I
### ANTECEDENTES

Don Jesús Soberal Dorta falleció el 26 de diciembre de 1990 en Arecibo, Puerto Rico, bajo testamento común abierto, según consta de la escritura número 2, otorgada en Arecibo, Puerto Rico, el 29 de mayo de 1981, a las 4:50 p.m., ante el notario Don Efraín Ruiz Ruiz. En tal declaración de última voluntad el causante revoca expresamente un único testamento anterior, nombra al Lcdo. Antonio Pérez Bayón al cargo de Albacea y Contador Partidor y dispone de sus bienes de la siguiente forma, que citamos textualmente:

*"---A) Instituye como sus únicos y universales herederos en el tercio forzoso que dispone la Ley a sus hijos antes mencionados, ISABEL MARIA SOBERAL ROMAN y JACKSEN SOBERAL URBISTONDO.*

*---B) En cuanto al tercio de mejora que dispone la Ley, deja el mismo a su hija doña Isabel María Soberal Román, a quien instituye como heredera en dicho tercio de mejora.*

*---C) En cuanto al tercio de libre disposición que dispone la Ley, lega el mismo a su esposa doña CRUZ MARIA ROSA, disponiendo que en pago de dicha participación o legado le sea adjudicada la casa residencia del Testador radicada en el Barrio Naranjito del término municipal de Hatillo, Puerto Rico.*

*---Que para el caso de que dicha propiedad tuviera un valor mayor a la participación antes mencionada, dispone el Testador que pague doña Cruz María Rosa, la diferencia en valor a los herederos y, en caso que el valor de la participación antes indicada sea inferior al legado aquí constituido, que se adjudique el balance a que tiene derecho en cualquier otros bienes del Testador."*

### HECHOS

Al momento de testar el causante, Isabel María Soberal Román y Jacksen Soberal Urbistondo son sus únicos hijos sobrevivientes. La primera es producto del segundo de cuatro matrimonios y Jacksen nace fuera de matrimonio. Otra hija del causante, Doris Soberal Mora, ya le había premuerto al testador en junio de 1950, sin dejar descendientes que la puedan representar ahora ante la herencia que nos ocupa.

Jacksen Soberal Urbistondo premuere al causante el 21 de octubre de 1988, en Manhattan, Ciudad de Nueva York dejando 4 hijos que responden a los nombres de Doris Nivia y

Marylin Soberal Martell, Jacksen Soberal García y Gilberto Soberal; todos mayores de edad y ninguno es tan siquiera mentado en el testamento que nos ocupa.

Posterior a la muerte de Jacksen el testador no enmienda el testamento de marras para ajustarlo a su nueva situación sucesoral. El testamento tampoco cuenta con cláusula de sustitución que salve la premoriencia de heredero forzoso.

El 21 de junio de 1992 la sucesión Soberal-Dorta obtuvo el relevo de Hacienda sobre el caudal relicto (13 LPRA 5433). Surge discrepancia entre la coheredera Isabel Soberal y el Albacea-Contador Partidor en torno a la fuente de pago del usufructo viudal. Ello causa la presentación de la demanda civil CAC-93-0310, sobre *"Declaración total de Herencia"*.

En dicho litigio los descendientes de Jecksan comparecen como codemandantes en *"carácter de herederos"* del causante, Don Jesús Soberal Dorta. A tal efecto habían ya presentado ante el Tribunal de Distrito de Arecibo trámite, *ex-parte* CS-92-2105, sobre *"Declaratoria de Herederos Complementaria de Don Jesús Soberal Dorta... a los efectos de sustituir a Don Jecksan Soberal Urbistondo... por sus herederos..."* Se obtuvo Resolución a tal efecto el 22 de diciembre de 1993 (Hon. Nilda Román Ramos, J.) y con dicho dictamen interesan suplementar la voluntad testamentaria del causante Soberal Dorta, como si en el testamento se hubiere provisto para la sustitución de Jecksan, en caso de su premoriencia, repartiendo su legítima por partes iguales entre los descendientes de Jecksan, lo que en el testamento no se hizo. Entendemos que ello obedece a la voluntad de los herederos forzosos llamados a la herencia del causante Don Jesús Soberal Dorta, todos mayores de edad y plenamente capacitados y no es asunto de apelación.

El litigio principal **en instancia** gira en torno a: (i) a si la viuda tiene derecho a recibir la cuota usufructuaria más el tercio de libre disposición, que el testamento le concede, (ii) que el Albacea rinda los informes de ley con los que no ha cumplido en dos años, (iii) se disponga en cuanto a la validez de la cláusula Novena del testamento (que fija la partición al valor de Hacienda para fines tributarios del único bien inmueble en el caudal) y (iiii) la designación de un *"Administrador Judicial"*, lo que necesariamente comprende la destitución del Albacea.

Mediante Resolución de 13 de febrero de 1995 notificada el 22 de febrero de 1995 el Tribunal de Instancia atendió parte de ese litigio y resolvió: *"...que en el presente caso el testador tuvo la intención de dejar a su esposa el legado [,] parte de la cuota viudal usufructuaria"* y concluyó el dictamen señalando:

*"Por los motivos antes expuestos la viuda doña Cruz Marsa Rosa tendrá derecho en su momento al legado y al usufructo viudal; una vez se determine que el primero no sea inoficioso a la legítima de los herederos, ó sea que no pase del tercio de la libre disposición."*

## LITIGIO ANTE NOS

Contra tal único dictamen recurre en *Certiorari* y en tiempo la parte demandante, señalando como único error de instancia el haber resuelto que ante tales circunstancias se le pueda reconocer a la viuda el tercio de libre íntegro más la cuota usufructuaria viudal, vía interpretación de la voluntad del testador. Decidimos expedir auto de *certiorari* el 27 de abril de 1995 y se encuentra perfeccionado el recurso.

## II
## ANALISIS

Surge de autos que las disposiciones del testamento que nos ocupa, son meramente anulables en cuanto a la institución de herederos, debido a preterición, Art. 742 del Código

Civil, 31 L.P.R.A. 2368, *Díaz Lamoutte v. Luciano,* 85 D.P.R. 834, *Blanco v. Sucn. Blanco,* 106 D.P.R. 471, *Cabrer v. Registrador,* 113 D.P.R. 424.

Cuando el causante testó, según surge de autos, contaba con su hija Isabel María y su hijo Jecksan, ambos vivos. También habían ya nacido sus 4 mencionados nietos, hijos de Jecksan. El testamento, como hemos dicho, no dispone, en cuanto a sustitución de herederos forzosos, Art. 703 del Código Civil, 31 L.P.R.A. 2301 y Jecksan premuere al causante, dejando a su vez 4 hijos que luego estaban vivos al momento del fallecimiento del causante.

Cuando Don Jesús Soberal Dorta fallece el 26 de diciembre de 1990, sus únicos herederos forzosos son: su hija Isabel María y los 4 nietos, hijos de Jecksan, que suben a la herencia del abuelo por representación en la estirpe paterna. Como el testamento guarda total silencio en cuanto a estos 4 herederos-nietos, a falta de cláusula de sustitución para caso de premoriencia y a falta de asignación alguna en el testamento a favor de estos cuatro forzosos por representación, el testamento incide en preterición que podría afectar toda la institución de herederos. Art. 776 y 742 del Código Civil, 31 L.P.R.A. 24S4; 2368. Véase, Vélez Torres, *Derecho de Sucesiones,* 1992, 2da ed. revisada, T. IV, Vol. III, pág. 318. González Tejera, *Derecho Sucesorio Puertorriqueño,* San Juan, Vol. II, pág. 452.

En el testamento se utiliza el vocablo *"legado"* para la asignación del tercio libre a la viuda. Concurrimos con el Tribunal de Instancia en que claramente se trata de un legado parciario, lo que equivale a cuota alicuota o cuota abstracta de una unidad común, que en nuestra jurisdicción, fiel a la teoria objetivista, constituye un llamamiento a título universal y por consiguiente un llamamiento en calidad de heredero, según resuelto en *Cintrón v. Cintrón,* 120 D.P.R. 39; **87 JTS 115**. Véase también *Blanco vs. Sucn. Blanco,* 108 D.P.R. 471, *Vivaldi v. Reg.,* 86 D.P.R. 629█ Por tal razón no se da el supuesto del Art. 742 del Código Civil, 31 L.P.R.A. 2368, que salva las mandas y mejoras, porque del testamento no surge manda o mejora. La disposición del tercio de libre a favor de la viuda, aunque se denomina *"legado",* por ser legado parciario, en Puerto Rico actualmente equivale a una transmisión a título de herencia, *Cintrón, supra,* y por tanto correría igual suerte que la institución testamentaria de herederos, de la que de tal manera forma parte█

Conforme a la doctrina, la institución hereditaria dentro de un testamento se considera válida aún en casos de preterición manifiesta, mientras quien tenga legitimación activa ("standing") para atacarla judicialmente, no lo haga. *Cabrer v. Reg.,* 113 D.P.R. 424, págs. 439-440; *Garrastazu v. Reg.,* 36 D.P.R. 177; *McCormick v. McCormick,* 52 D.P.R. 691. La situación de autos demuestra que aunque podría o pudo ser anulado el testamento que nos ocupa, actualmente permanece válido y quienes único aparentan tener legitimación activa para atacarlo han hecho todo lo contrario y lo acogen, *Garrastazu v. Reg, supra: McCormick v. McCormick, supra.*

El asunto presentado ante nos, dentro del marco de hecho y derecho ya señalado, sólo requiere que a la luz del testamento adjudiquemos respecto a que tercio del caudal ha de sufragar el usufructo viudal. Somos llamados a resolver si saldrá del tercio libre (ya totalmente adjudicado vía *"legado"* pro-indiviso a la viuda) en cuyo caso por confusión de acreedor y deudor la viuda queda satisfecha de ambos derechos al recibir el tercio libre íntegramente en calidad de heredera, o saldrá del tercio de mejora (totalmente adjudicado en herencia a la co-heredera forzosa Isabel Soberal Román), en cuyo otro caso, la cuota usufructuaria viudal ha de reducir la mejora, que toca a Isabel.

## III
## CUOTA USUFRUCTUARIA VIUDAL

El 27 de abril de 1995 dictamos la siguiente Resolución:

*"La Resolución de 13 de febrero de 1995 (Recurrida) expone, en su parte dispositiva, como sigue:*

*Por los motivos antes expuestos la viuda doña Cruz María Rosa tendrá derecho en su momento al **legado** y al **usufructo viudal**; una vez se determine que el primero no sea inoficioso a la legítima de los herederos, o sea, que no pase del tercio de la libre disposición. De ocurrir así, se tomarán las providencias dispuestas por el propio testador para evitar que se afecte la legítima de sus herederos forzosos, cumpliéndose de esta manera con su intención al testar y con lo dispuesto por ley sobre esta materia."* (Enfasis suplido)

El recurrente imputa el siguiente error:

*"Erró la Juez Superior, Honorable Emilia Román Nevárez, al declarar que la viuda en el presente caso tiene derecho al usufructo viudal en conjunto con el legado del tercio de libre disposición, contrario a la jurisprudencia establecida por el Honorable Tribunal Supremo a los efectos de que la norma general es la de no acumular cuota viudal con el legado. La Honorable Juez, invoca como fundamento para sostener su decisión el que de una interpretación del Testamento se desprende que el causante tuvo la intención de dejar a su esposa no sólo el legado, sino, además, la cuota viudal usufructuaria.*

*Se expide el auto de certiorari. Se concede a los demandados-recurridos Antonio Pérez Bayón y María Cruz Rosa, término de quince (15) días para exponer razón por la cual no debamos resolver que conforme dispone el Artículo 766 del Código Civil, 1930, 31 L.P.R.A. 2416, ▮ a la viuda sólo le corresponde el tercio íntegro de libre disposición. Ello así porque en la sucesión testada del causante, que los herederos forzosos acatan, el usufructo viudal sale de dicho tercio libre, el cual el testador dejó integro a la viuda. De tal forma la viuda recibirá el tercio libre en pleno dominio (usufructo y nuda propiedad) lo cual es el máximo a que tiene derecho. No es posible atribuir al testador intención en contrario, cuando al así interpretar tendríamos que anteponer la voluntad del causante a las disposiciones imperativas del Código, lo que el ordenamiento sustantivo no permite. Cintrón v. Cintrón, supra; Viuda de Sambolín v. Registrador, supra."*

La parte demandada-recurrida no ha comparecido. Ha transcurrido el término y estamos en condición de resolver en cuanto a la fuente de pago de la cuota usufructuaria de la viuda, en el testamento que nos ocupa, único asunto que atañe a este trámite apelativo.

## DICTAMEN

Entendemos y resolvemos que el pago de la cuota usufructuaria que corresponde a la viuda en la situación testamentaria de autos queda gobernada por la disposición del Art. 766 del Código Civil, 1930, 31 L.P.R.A. 2416. El usufructo viudal sale del tercio de libre disposición.

Independientemente de que la sucesión de un causante provenga íntegramente de matrimonios o de matrimonio y de fuera de matrimonio, tal circunstancia es totalmente inconsecuente en derecho (independientemente de las distinciones que al efecto hace el Código) luego de la instauración de nuestra Constitución de 1952; específicamente lo dispuesto en el Artículo II, sección 1 de la Carta de Derechos▮ Véase *Lebrón v. Sucn. Elías,* 90 D.P.R. 266, (1964), *Ocasio v. Díaz,* 88 D.P.R. 676 (1963).

La Constitución es preámbulo de toda legislación, anterior o posterior. En tanto y en cuanto el Art. 766, *supra*, hace diferencias entre hijos de matrimonio e hijos de fuera de matrimonio, incide con nuestra carta de derecho y por tanto cede ante ella.

Consecuentemente debemos leer el citado Artículo 766, *supra*, de la siguiente manera:

"*En el caso de concurrir hijos de dos o más* ~~matrimonios~~ *estirpes, el usufructo correspondiente al cónyuge viudo de* ~~segundas nupcias~~ *se sacará de la tercera parte de libre disposición de los padres.*" (Tachado y énfasis suplido)

El distinguido profesor, Dr. Efraín González Tejera, anticipó esta situación en su obra *Derecho Sucesorio Puertorriqueño,* San Juan, 1983, Vol I, y a las páginas 97 y una vez más nos ilustra en su particular estilo, sencillo y erudito:

"*En este caso (refiriéndose el autor a Díaz Molinari v. Cividanes, 37 D.P.R. 297) si bien hubo dos matrimonios, el viudo concurre únicamente con hijos del primer matrimonio de la causante. Nos preguntamos cómo hubiese reaccionado el Tribunal, de haber concurrido el viudo con hijos del primer matrimonio y con un hijo natural reconocido. En 1927, la solución jurisprudencial hubiera sido una aplicación literal del antes mencionado Art. 766 al efecto de que, al usar el legislador la frase "hijos de dos o más matrimonios", se refiere a eso, hijos de matrimonio y no siéndolo el hijo natural, no era de aplicación el artículo. Sin embargo, a la luz de las disposiciones constitucionales de 1952, y de la jurisprudencia sobre filiación de la década de 1960, que discutiremos próximamente, la solución debe ser distinta. Ciertamente, la no aplicación del Art. 766 a la situación descrita operaría un discrimen por razón de nacimiento contra el hijo extramatrimonial, pues su participación hereditaria quedaría mermada si la cuota del viudo ha de pagarse del tercio de mejora y no del tercio libre, de resolverse que dicho artículo no es de aplicación. Por el contrario, resolver que el artículo gobierna la situación tiene el efecto de aumentar la participación del hijo habido fuera de matrimonio. Pero en una sucesión donde el causante haya dispuesto de todo el tercio de libre o de parte sustancial del mismo, el viudo o viuda afrontaría el riesgo de perder su legítima. En resumen, el resultado final se haría depender del hecho de haber nacido el hijo dentro o fuera de matrimonio, por lo que la validez constitucional del Art. 766 estaría en duda.*" (pág. 97)

"*En resumen, luego de un azaroso proceso de discrimen durante gran parte del siglo, el hijo extramatrimonial emerge por fin con igualdad de derechos sucesorios que el hijo de matrimonio. Esto es particularmente así en la sucesión intestada porque en la testada, la moderada libertad dispositiva que la ley le reconoce al causante se usa, las más de las veces, en detrimento de la prole extramatrimonial.*" (pág. 113)

No hace falta mayor abundamiento en la explicación.

Conforme a lo intimado, resolvemos que a la viuda sólo le corresponde el tercio íntegro de libre disposición. Ello así porque en la sucesión testada del causante, que los herederos forzosos aquí acatan, el usufructo viudal sale del tercio libre, el cual el testador dejó íntegro a la viuda. De tal forma la viuda recibirá el tercio libre en pleno dominio (usufructo y nuda propiedad) lo cual es el máximo a que tiene derecho. No es posible atribuir al testador intención en contrario, cuando al así interpretar tendríamos que anteponer la voluntad del causante a las disposiciones imperativas del Código, lo que el ordenamiento sustantivo no permite. *Cintrón v. Cintrón, supra; Viuda de Sambolín v. Registrador,* 94 D. P.R. 320, (1967).

Se revierte el mandato a instancia para continuación de trámites conforme aquí se dispone, al efecto de que bajo el testamento que nos ocupa el usufructo viudal sale del tercio de libre disposición y correspondiéndole íntegramente a la viuda por herencia testada lo segundo, queda también resarcido lo primero.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

**ESCOLIOS 95 DTA 199**

**1.** El nombre correcto es Jecksan.

**2.** Para excelente distinción entre tesis objetivista y subjetivista en la doctrina española y europea, e interpretación híbrida sugerida por el profesor, véase Efraín González Tejera, *Derecho Sucesorio Puertorriqueño,* San Juan, Vol. I, págs. 14-25. Nuestra casuística, al igual que el Código, ha incidido en alguna confusión entre ambas tesis. Para muy buena explicación histórica véase: Yolanda B. Rivera Vega, *Revista de Derecho Puertorriqueño,* Rev. Jur. Univ. Católica, Ponce, P.R., Vol. 33, números 2-3, 1993, pág. 189.

**3.** No tenemos que entrar a dilucidar si la prerrogativa testamentaria de la viuda, que le permite cobrar total o parcialmente el *"legado"* en la vivienda, convierte el llamamiento en válido legado de parte específica del caudal, cobrable parcialmente en el inmueble ganancial; o es meramente herencia de cuota abstracta del caudal, cobrable en el inmueble, hasta donde alcance.

**4.** *"En el caso de concurrir hijos de dos o más **matrimonios**, el usufructo correspondiente al cónyuge viudo de segundas nupcias se sacará de la tercera parte de libre disposición de los padres."* (Enfasis suplido).

Véase también *Vda. de Sambolín v. Registrador,* 94 D.P.R. 320, (1967).

**5.** *"[Dignidad e igualdad del ser humano; discrimen, prohibido]*

*La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana."*