Cordero, Juez Ponente
*1172 TEXTO COMPLETO DE LA SENTENCIA
Mediante recurso de apelación se nos solicita revisar una sentencia dictada por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Aibonito, en la cual se declaró con lugar una demanda en cobro de dinero, condenando al demandado-apelante a pagar la cantidad de $10,757.70, los intereses devengados, más las costas y los gastos del caso. En dicha sentencia se declaró no ha lugar la reconvención de la parte demandada por la suma de $29,000.00.
I
El demandado-apelante Efraín Espada ("Espada"), persona dedicada al cultivo de plantas ornamentales, mantuvo relaciones comerciales con el demandante-apelado CFM-1 Young American Rose Nursery ("Young American"), en virtud de las cuales este último le enviaba a Espada desde Florida, Estados Unidos, órdenes de plantas de rosas para su cultivo y venta en Puerto Rico, previa solicitud al efecto. Además de las rosas, Espada había negociado con Young American, sin problema alguno, la compra de otros tipos de plantas a través de su representante el Sr. William Gorden Moore por aproximadamente catorce años.
En el 1992 Espada le compró una orden de mil rosas a Young American, las cuales rindieron el resultado esperado habiendo sido cultivadas a la intemperie, sin saran, a pleno sol y viento. A base del éxito del cultivo y de las ganancias obtenidas mediante la venta de estas rosas, Espada decidió hacer nuevos pedidos y el 30 de junio de 1992 hizo tres órdenes en la siguiente forma:
A. Orden Núm. 930293 por la cantidad de 1,030 rosas, las cuales fueron enviadas el 1 de enero de 1993 a un costo de $2,725.40.
B. Orden Núm. 930294 por la cantidad de 1,020 rosas, las cuales fueron enviadas el 1 de febrero de 1993 a un costo de $2,695.50.
C. Orden Núm. 930295 por la cantidad de 1,020 rosas, las cuales fueron enviadas el 1 de marzo de 1993 a un costo de $2,707.30.
Espada realizó dos órdenes adicionales, una transcurridos treinta y tres días de haber recibido la primera orden, el 2 de febrero de 1993 y otra quince (15) días más tarde, el 17 de febrero de 1993, las cuales se describen en la siguiente forma:
D. Orden Núm. 930775 por la cantidad de 1,000 rosas, las cuales fueron enviadas el 15 de febrero de 1993 a un costo de $2,931.60.
E. Orden Núm. 930815 por la cantidad de 1,000 rosas, las cuales fueron enviadas el 1 de marzo de 1993 a un costo de $2,931.60.
En resumen, Espada ordenó a Young American desde el 30 de junio de 1992 al 17 de febrero de 1993 un total de 5,070 plantas a un costo de $13,991.40. Una vez recibidas las rosas, Espada procedió a sembrarlas brindándole el mismo tratamiento que recibieron las primeras mil rosas que compró inicialmente. El cultivo de las rosas correspondientes a estas cinco órdenes no tuvo el mismo resultado que tuvieron las compradas en la primera orden de 1992.
*1173 Según alega el apelante Espada, estas plantas, de rosas, contrario a las primeras, no retoñaron; otras al retoñar no se desarrollaron y como consecuencia murieron. Igualmente, Espada alega que transcurrido el tiempo en que se supone que los esquejes retoñaran sin que lo hicieran, él llamó en varias ocasiones a la secretaria de la compañía Young American para notificar lo que estaba sucediendo. La secretaria quedó en notificarle a Young American la queja de Espada y la de otros floricultores que también se habían comunicado para expresar las mismas dificultades en el cultivo. Espada alega en su escrito de apelación que pasado el tiempo y sin obtener respuesta de Young American, volvió a llamar pues empezó a notar que los esquejes que habían retoñado no se desarrollaban.
Ambas partes coinciden en que el Sr. William G. Moore, representante de ventas, y el Sr. William Young, propietario de Young American, viajaron a Puerto Rico el 13 de mayo de 1993 para visitar a los floricultores querellantes. Young American señaló en su escrito que sus representantes notaron que las rosas de varios jardines de sus clientes, entre ellas, las de Espada, estaban en malas condiciones, ya que estaban muertas o muriéndose. Young American además señaló que la situación era tan seria que decidió ayudar a educar a los agricultores de P.R., en cuanto a los procedimientos adecuados en el manejo y cultivo de rosas.
Quedó estipulado entre ambas partes que Young American coordinó un seminario el cual fue conducido a través del Sr. Víctor Zapata Saavedra, Agente Agrícola, MEI, del Departamento de Servicio de Extensión Agrícola de P.R. En este seminario se ofreció información en cuanto al propio y adecuado manejo de las rosas en Puerto Rico. En síntesis, se orientó a los floricultores que era conveniente proteger las rosas del exceso de viento, aire seco y sol intenso para evitar que los tallos se deshidraten. Espada no asistió a dicho seminario. Por otro lado, el señor Young decidió darle un 25% de crédito en la pérdida a todos sus clientes en Puerto Rico, incluyendo a Espada. Aún así, Espada se negó a satisfacer dicha suma razón por lo cual Young American presentó una demanda en cobro de dinero en su contra.
Espada alegó que las rosas llegaron enfermas, que su cultivo no tuvo éxito, que lo que produjo fueron pérdidas y reconvencionó para que se le indemnizara por los gastos en que éste incurrió en intentar cultivarlas y por las ganancias dejadas de percibir.
II
El 21 de agosto de 1996 el tribunal de instancia dictó sentencia declarando con lugar la demanda y no ha lugar la reconvención, ordenando a Espada a satisfacer el pago de la deuda reclamada de $10,757.70, los intereses devengados, más las costas y gastos del caso. No conforme, Espada presentó el presente recurso de apelación en el cual le imputa al foro a quo la comisión de los siguientes errores.
Por estar íntimamente relacionados los errores uno y cuatro, los discutiremos conjuntamente.

"1. ERRO EL HONORABLE TRIBUNAL AL CONCLUIR QUE EL DEMANDADO EN ESTE CASO, TRATO DE DEMOSTRAR INFRUCTUOSAMENTE QUE LAS ROSAS ESTABAN DEFECTUOSAS PARA EVITAR EL PAGO DE LAS MISMAS. LAS ROSAS ORDENADAS NO ESTABAN DEFECTUOSAS. DE HABERLO ESTADO, SU RECLAMACION DE TODAS FORMAS ESTARIA PRESCRITA. LA REALIDAD FUE QUE EL DEMANDADO IGNORABA COMO CULTIVAR LAS ROSAS EN SU JARDIN, ESTA IGNORANCIA PROVOCO QUE SE LE MURIERAN SUS ROSAS O NO SE DESARROLLARAN NORMALMENTE. SU IGNORANCIA EN EL CULTIVO DE ROSAS Y LA CONSECUELTE [SIC] PERDIDA DE LAS PLANTAS NO FUE CULPA DEL 
*1174
DEMANDANTE-VENDEDOR. EL VENDEDOR NO VENIA OBLIGADO NI A CONCEDERLE CREDITOS POR SU IGNORANCIA NI A ORIENTARLOS CON SEMINARIOS PARA QUE SE EDUCARAN EN EL CULTIVO DE ROSAS.

4. ERRO EL HONORABLE TRIBUNAL AL DECLARAR CON LUGAR LA DEMANDA Y SIN LUGAR LA RECONVENCION."

Debemos comenzar señalando que la revisión apelativa en cuanto a la apreciación y aquilatación de la prueba documental no incluye prueba que no sea parte del expediente o legajo elevado. Nuestro Tribunal Supremo estableció en Pueblo v. Morales Suárez, 117 D.P.R. 497, 502 (1986), que dentro de un recurso de apelación no se puede considerar un documento que no hubiese sido presentado y hecho parte de los autos ante la sala de instancia. En el presente recurso de apelación nada hemos encontrado que demuestre que Espada presentó en el tribunal inferior algunos de los exhibits que transcribe en su apelación; tampoco desfiló prueba sobre estos aspectos, ni brindó bibliografía alguna relacionada. Por el contrario, de esos documentos claramente surge que el apelante Espada se limitó a descansar en la prueba documental y científica presentada por el apelado Young American, sin levantar otra defensa o teoría alguna en su favor ante dicho tribunal.
Además, considerando que esta prueba constituye una cuestión por primera vez planteada, nuestro más alto foro ha expresado que un tribunal se puede negar a considerar en apelación o revisión cuestiones nuevas no suscitadas ni debatidas en etapas anteriores del procedimiento. Murcelo v. H.I. Hettinger & Co., 92 D.P.R. 411, 426 (1965); Zalduondo v. Iturregui, 83 D.P.R. 1, 12 (1961); Ex parte Soto; Rodríguez, Int., 71 D.P.R. 547, 551 (1950); McCormick v. McCormick, 52 D.P.R. 691, 703 (1938); Large & Acevedo v. Fernández, 38 D.P.R. 511, 512 (1928).
Ante esta situación, esta prueba se torna inadmisible toda vez que no fue considerada en el tribunal recurrido y no consta en ninguno de los anejos incluidos por el apelante, así como en la relación del caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia dictada por el tribunal de instancia. Por lo tanto, tenemos que concluir que el demandado-apelante está impedido de utilizar bibliografías y citas de textos que nunca utilizó en el tribunal inferior. Esto significa que habiendo transcurrido el tiempo de presentar prueba, este tribunal no puede entrar a discutir, en este recurso, si en realidad el demandado ignoraba como cultivar las rosas y si esta ignorancia provocó que se le murieran sus rosas o no se desarrollaran normalmente.
Sobre las determinaciones de hechos de un tribunal inferior debemos señalar que el principio rector que guía nuestra función apelativa dispone que se intervendrá con éstas sólo cuando se demuestre que existen circunstancias extraordinarias, error manifiesto en la apreciación de la prueba, indicios de pasión, prejuicio o parcialidad para descartarlas. Pueblo v. Hernández Mercado, 126 D.P.R. 427, 446 (1990); Pueblo v. Rivero, Lugo y Almodóvar, 121 D.P.R. 454, 473 (1988); Pueblo v. Acabá Raíces, 118 D.P.R. 36, 376 (1987); Vélez v. Srio. de Justicia, 115 D.P.R. 533, 545 (1984); Pueblo v. Pagán Díaz, 111 D.P.R. 608, 621 (1981) y Ortiz v. Cruz Pabón, 103 D.P.R. 939, 946 (1975). Sobre el particular, los juzgadores de hechos merecen gran deferencia y respeto en la solución justiciera de los conflictos, en la evidencia a recibirse y en la apreciación imparcial de la prueba. La Costa Sampedro v. La Costa Bolívar, 112 D.P.R. 9, 19 (1982). De intervenir con sus determinaciones en ausencia de las situaciones mencionadas, estaríamos usurpando las funciones adjudicativas del tribunal a quo. Morán Simó v. Gracia Cristóbal, 106 D.P.R. 155, 161 (1977). Esto es así debido a que son los tribunales de instancia los que están en mejor posición de aquilatar la prueba que se desfila, toda vez que tienen ante sí a los testigos y son partícipes directos de la cuestión que allí se suscita, careciendo de esta ventaja los tribunales apelativos. Pueblo v. Pellot Pérez, 121 D.P.R. 791, 806 (1988) y Pueblo v. Cabán Torres, 117 D.P.R. 645, 654 (1986).
*1175 En este caso, el tribunal de instacia escuchó y. recibió lajmieba, la. cual fue creída por él y a través de la cual estableció quedas rosas enviadas a Espada no estaban defectuosas. Las rosas compradas por Espada en este caso fueron las "dormant plants" o rosas durmientes. Young American desfiló prueba de cómo se cultivan estas rosas en el área específica de Aibonito. Según esta evidencia, el tribunal de instancia determinó que esta variedad de rosas requiere de un cuidado especial que Espada no le brindó, razón por la cual perdió su cosecha. El mero hecho de que Espada alegue tener diecisiete años (17) de experiencia como floricultor, no significa que esté inmune de cometer- errores y mucho menos lo convierte en. un amplio conocedor de las técnicas y condiciones que deben existir en el cultivo de todas las clases y especies de rosas existentes. Más aún cuando de los documentos acompañados en el recurso de apelación se desprende que ésta era la segunda vez en catorce (14) años de relaciones comerciales que Espada le ordenaba rosas a Young American.
III
Pasemos ahora a discutir los errores dos y tres señalados en el recurso de apelación.
"2. ERRO EL TRIBUNAL AL CONCLUIR QUE EL DEMANDADO-APELANTE AL TIEMPO DE RECIBIR LAS ROSAS, LAS EXAMINO A SU CONTENTO.

3. ERRO EL HONORABLE TRIBUNAL AL CONCLUIR QUE LAS ALEGACIONES DEL DEMANDADO-APELANTE ESTABAN PRESCRITAS POR NO HABER EJERCIDO SU ACCION DENTRO DE LOS CUATRO DIAS SIGUIENTES AL RECIBO DE LAS ROSAS."

En el caso de las compraventas mercantiles según el Código de Comercio el comprador tiene dos términos para repetir contra el vendedor. Estos términos dependerán de la alegación que presente el vendedor. Si el comprador presenta una reclamación por vicios o defectos de cantidad o calidad, el Código de Comercio provee el término prescriptivo de cuatro días según lo dispone el artículo 254 en lo aquí pertinente:

"El comprador que, al tiempo de recibir las mercaderías, las examinare a su contento, no tendrá acción para repetir contra el vendedor, alegando vicio o defecto de cantidad o calidad en las mercaderías.

El comprador tendrá el derecho de repetir contra el vendedor por defecto en la cantidad o calidad de las mercaderías recibidas enfardadas o embaladas, siempre que ejercite su acción dentro de los cuatro días siguientes al de su recibo, y no proceda la avería de caso fortuito, vicio propio de la cosa, o fraude. (Enfasis nuestro.)

El vendedor podrá evitar esta reclamación exigiendo, en el acto de la entrega, que se haga el reconocimiento, en cuanto a cantidad y calidad, a contento del comprador"

10 L.P.R.A. see. 1712.
Por otro lado,, cuando el vendedor alegue vicios internos en la cosa vendida, el término prescriptivo provisto por el Código de Comercio es uno mayor según lo dispone el Art 260, el cual establece que:
"El comprador que no haya hecho reclamación alguna fundada en los vicios internos de la cosa vendida, dentro de los treinta días siguientes a su entrega, perderá toda acción y derecho a repetir por esta causa contra el vendedor." (Enfasis nuestro) 10 L.P.R.A. see 1718.
Los defectos de calidad o diferencias de calidad son aquellos "inherentes a la naturaleza de la mercancía, son diferencias básicas sobre su composición, sobre la índole de algún *1176 rasgo característico de la cosa, tales como diferencias de tejido, fibra, color, diseño, procedencia o carácter de las materias primas." Julsrud v. Peche de P.R. Inc, 115 D.P.R. 18, 23 (1983). Por otro lado los vicios internos son aquellos que escapan: "a la observación de una persona de diligencia media, el inherente al modo imperfecto en que la mercancía fue fabricada, embalada, manejada o custodiada, [y] el que convierte en impropia la cosa para el uso a que ha de destinársele." Id.
En este recurso de apelación Espada alega que la acción no estaba prescrita. En el tribunal de instancia, él alegó inicialmente que las rosas objeto del contrato en esta controversia estaban dañadas o en la alternativa que eran de un tipo y calidad diferente. El tribunal de instancia resolvió que el producto no estaba defectuoso y que habiéndolo estado, su reclamación estaba prescrita.
Para poder establecer si ha transcurrido un término prescriptivo es necesario conocer la fecha exacta y precisa que se tomará como punto de partida para computarlo. En este recurso apelativo se alega que la causa de acción no estaba prescrita; sin embargo, en ninguno de los documentos presentados se desprende la fecha en que Espada alegadamente realizó la llamada telefónica a Young American que hubiese causado la interrupción al término prescriptivo.
Aun sin entrar a discutir cuál término prescriptivo le es de aplicación al caso de autos, sin lugar a dudas la primera orden está prescrita dado el hecho que ya habían pasado treinta y tres (33) días desde que la recibió hasta el día en que ordenó el cuarto pedido. En cuanto a la prescripción de las subsiguientes órdenes realizadas por Espada, tenemos que señalar que corresponde a los apelantes situar al foro apelativo en condición de poder evaluar sus planteamientos. Correa Negrón v. Pueblo, 104 D.P.R. 286, 297 (1975); Escalera v. Armenteros, 74 D.P.R. 11, 17-18 (1952); Marrero v. Olmeda, 69 D.P.R. 217, 222 (1948). No habiendo establecido Espada la fecha específica en que alegadamente se interrumpió el término prescriptivo, no estamos en condición de aceptar prueba a estas alturas del proceso. Por lo tanto, tenemos que coincidir con el tribunal sentenciador ante el cual ambas partes tuvieron la oportunidad de presentar prueba.
Por los fundamentos antes expuestos, se confirma la sentencia apelada.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General