# 2002 DTA 118

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL V DE PONCE Y AIBONITO

FRATICELLI TRUCKING CO., INC.
Recurrida

v.

BROWNING-FERRIS INDUSTRIES OF PUERTO RICO, INC.
Peticionaria

San Juan, Puerto Rico, a 10 de julio de 2002

Panel especial integrado por su Presidente, el Juez Brau Ramírez, la Jueza Pabón Charneco y el Juez Salas Soler

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION1RESOLUCIÓN

### I

La peticionaria Brownies-Ferris Industries of Puerto Rico, Inc. (*"BFI"*), solicita la revisión de una resolución emitida el 12 de abril de 2002 por el Tribunal de Primera Instancia, Sala Superior de Ponce, en el procedimiento sobre incumplimiento de contrato instado contra la peticionaria por la recurrida Fraticelli Trucking Co., Inc. (*"FTC"*).

Mediante el dictamen en cuestión, el Tribunal de Primera Instancia denegó una moción de desestimación presentada por BFI al amparo de la Regla 10.2(5) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.10.2(5), observando que la misma más bien reproducía los argumentos anteriormente planteados por BFI en una moción de sentencia sumaria que había sido previamente denegada por el Tribunal el 21 de septiembre de 2000.

Declinamos expedir el auto solicitado.

### II

Según surge del recurso, FTC es una corporación organizada bajo las leyes de Puerto Rico, dedicada a la transportación de carga, cuya oficina principal está ubicada en el Municipio de Peñuelas.

Por su parte, BFI es una empresa que hace negocios en Puerto Rico, dedicada al recogido y manejo de desperdicios sólidos.

La controversia entre las partes está relacionada a un contrato suscrito entre ellas el 16 de diciembre de 1994, en la ciudad de Ponce, para el acarreo de desperdicios sólidos.

Para esta época, BFI había construido y estaba a punto de inagurar operaciones, de una estación de transbordo

de basura en el Municipio de Cataño. La misma estaba dirigida a recibir y aglutinar desperdicios sólidos de distintos municipios de la isla, con el propósito de transportarlos hasta su lugar final de disposición en dos vertederos localizados en los municipios de Ponce y Salinas.

FTC fue contratada para encargarse de la transportación de la basura desde la estación hasta los respectivos vertederos. El contrato entre las partes tenía una vigencia de un (1) año, a partir del inicio de operaciones de la estación de trasbordo.

Mediante el mismo, FTC se comprometió a transportar los vagones con desperdicios desde la estación de Cataño, hasta los vertederos de Ponce y Salinas, descargarlos allí y retornarlos nuevamente a la estación. Las partes acordaron una tarifa de $240 por cada viaje a Ponce y $198 por los viajes a Salinas.

El contrato contenía diversas cláusulas que gobernaban los detalles de los servicios. Entre éstas, la sección 4.9 concedía a FTC el derecho exclusivo de transportar desperdicios en el centro de trasbordo durante la duración del contrato. Dicha cláusula disponía que BFI anticipaba que la estación habría de manejar aproximadamente dieciseis (16) vagones al día de lunes a viernes, y seis (6) los sábados, pero añadía que BFI no hacía representación, garantía o compromiso alguno con respecto al número de vagones que se recibirían o el volumen de desperdicios que se generarían (*"makes no representation, warranty, or commitment with respect to the number of Trailers loaded or the volume of Municipal Solid Waste to be transported hereunder"*).

Por su parte, la sección 4.3 del contrato reservaba a BFI el derecho de reducir las horas de operación del centro de trasbordo. Dicha cláusula establecía lo siguiente:

*"The Transfer Station Operation (i.e., acceptance of Municipal Solid Waste and loading of such waste onto Trailers) Monday through Friday from 5:00am to 5:00pm and Saturday from 6:00am to noon, except the holidays observed by BFI. BFI shall have the right to reduce the number of operating hours on any operating day (or all operating days), and shall notify FTC in advance of any such reduction. ..."*.

La sección diez del acuerdo gobernaba la terminación del mismo:

*"10. TERMINATION*

*10.1 FTC acknowledges that an essential obligation under this Agreement is to ensure that all Municipal Solid Waste loaded by BFI be transported to the Disposal Facility as promtly as possible. Consequently, BFI shall have the right to terminate this Agreement upon notice to FTC under the following circumstances:*

*(a) failure to remove any Trailer from the Transfer Station within two (2) hours after notice by BFI that such Trailer is available for pickup, which failure occurs more than twice in any one (1)-month period;*

*(b) failure to simultaneously provide an empty Trailer or Trailer(s) to replace loaded Trailers removed by FTC, which failure shall occur more than twice in any one (1)-month period;*

*(c) failure to remove any Trailers from the Transfer Station prior to midnight on any operating day (unless otherwise directed by an authorized representative of BFI);*

*(d) failure to deliver and off-load any loaded Trailer to the Disposal Facility as promptly as possible after removal from the Transfer Station;*

*(e) any failure to comply with the rules and regulations of the Transfer Station or the Disposal Facility, which failure, in BFI's determination, materially affects the operations at any such facility;*

*(f) failure to maintain any and all permits, approvals or licenses required by any federal, state or local law, rule or regulation with respect to the performance of the Services by FTC; and*

*(g) any other breach of this Agreement by FTC, which breach is not cured within ten (10) days after notice therof is sent to FTC by BFI.*

*...*

*10.2 This Agreement may be terminated by FTC upon notice to BFI in the event BFI fails to pay any invoice within sixty (60) days after the due date thereof, provided that FTC shall first give BFI written notice of any such failure, and BFI shall have five (5) days from and after receipt thereof to cure any such failure."*

El 17 de diciembre de 1994, FTC empezó a ofrecer el servicio de acarreo conforme al acuerdo.

Luego de varios meses, a finales del mes de octubre de 1995, BFI le informó en una reunión a FTC el cierre de operaciones de la estación de transbordo de Cataño, con efectividad el 20 de octubre de 1995. BFI confirmó esta información en una carta remitida el 2 de noviembre de 1995 a FTC.

El motivo para el cierre de la estación de transbordo es que BFI negoció con el Municipio de Toa Baja para utilizar las facilidades de su vertedero, por lo que dejó de necesitar el acarreo de desperdicios a Ponce y a Peñuelas. BFI adoptó la postura de que dicha terminación era consistente con las secciones 4.9 y 4.3 del contrato, por cuanto BFI no había garantizado a FTC volumen alguno de negocios y se había reservado el derecho de reducir el número de horas de operación de la estación de transbordo.

FTC no estuvo de acuerdo con esta interpretación, y el 21 de octubre de 1996, instó ante el Tribunal de Primera Instancia la presente demanda por incumplimiento de contrato contra BFI. En su demanda, FTC alegó que BFI había incumplido con los términos del negocio al poner fin al mismo unilateralmente antes de la fecha de su vencimiento, reclamando los daños padecidos por la terminación prematura del contrato.

BFI contestó la demanda, negando las alegaciones.

Posteriormente, BFI presentó una moción solicitando se dictara sentencia sumaria a su favor. Alegó que sus actuaciones estaban cobijadas por las secciones 4.3 y 4.9 del contrato existente, según antes indicado. La moción de BFI fue acompañada por copia de varios documentos, incluyendo copia del contrato, una transcripción de una deposición tomada al presidente de FTC, y unos interrogatorios dirigidos a dicha parte.

FTC se opuso a la moción de la peticionaria, aludiendo que el acuerdo entre las partes, era que FTC habría de prestar sus servicios por el término de un año, y que el mismo sólo podía ser terminado antes de dicha fecha, en las situaciones contempladas en la citada sección 10, las cuales no contemplaban la terminación unilateral del negocio por la sola voluntad de BFI. FTC alegó que la cláusula 4.3 sólo le concedía a BFI el derecho a reducir el número de horas de operación de la estación, pero no al cierre total de la misma.

FTC planteó que, a pesar del lenguaje de la cláusula 4.9, BFI le había hecho representaciones específicas durante el proceso de negociación, referentes a la existencia de un volumen suficiente de basura que iba a manejar la estación.

Luego de otros trámites, el 21 de septiembre de 2000, el Tribunal de Primera Instancia emitió una resolución denegando la moción de sentencia sumaria de BFI. El Tribunal consideró que existía controversia real sustancial en cuanto la verdadera intención de las partes contratantes, con respecto a las cláusulas invocadas por cada una y sobre si BFI efectivamente había hecho representaciones durante el proceso de negociación del acuerdo,

relacionadas al volumen de basura que habría de manejar FTC.

BFI no solicitó reconsideración de dicha resolución ni recurrió de la misma.

El 8 de enero de 2002, sin embargo, BFI presentó una nueva solicitud de desestimación, esta vez bajo la Regla 10.2 de las de Procedimiento Civil, alegando que la demanda de FTC no aducía hechos que ameritaran la concesión de un remedio.

En su moción, BFI alegó nuevamente que sus actuaciones estaban cobijadas por las cláusulas 4.3 y 4.9 del acuerdo. Planteó, además, que por tratarse de un contrato mercantil, el tribunal venía obligado a considerar únicamente el texto del contrato, no pudiendo recibir evidencia extrínseca sobre la intención de las partes.

FTC se opuso a la moción.

El 13 de marzo de 2002, mediante la resolución recurrida, el Tribunal de Primera Instancia denegó la moción de BFI.

En su resolución, el Tribunal entendió que la moción de BFI constituia, esencialmente, una solicitud de reconsideración de su resolución del 21 de septiembre de 2000, la cual resultaba ser tardía. Descartó, además, la aplicación de los preceptos del código mercantil invocados por BFI.

Insatisfecha, BFI acudió ante este Tribunal.

### III

En su recurso, la peticionaria plantea que el Tribunal de Primera Instancia erró al denegar su moción de desestimación.

No percibimos, sin embargo, error alguno en la actuación de la distinguida Sala recurrida.

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, por su parte, autoriza al tribunal a dictar dicha sentencia cuando *"no existe controversia real sustancial en cuanto a ningún hecho material y ... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente."* *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico*, 150 D.P.R. ___ (2000), **2000 J.T.S. 33**, a la pág. 681; *Piñero v. A.A.A.,* 146 D.P.R. 890, 904 (1998); *Soc. de Gananciales v. Vélez & Asoc.,* 145 D.P.R. 508, 526 (1998); *Tello v. Eastern Air Lines*, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

El Tribunal Supremo de Puerto Rico ha aclarado, sin embargo, que la sentencia sumaria sólo debe ser dictada en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaria. *Rivera Rodríguez v. Departamento de Hacienda*, 149 D.P.R. ___ (1999), 99 D.P.R. 144, a la pág. 53; *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 802 (1993).

Si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaria, véanse, *Hernández Villanueva v. Hernández*, 150 D.P.R. ___ (2000), **2000 J.T.S. 26**, a la pág. 608; *Rivera Rodríguez v. Departamento de Hacienda*, 99 **J.T.S. 144,** a la pág. 53; *Rivera v. Superior Pkg., Inc.,* 132 D.P.R. 115, 133 (1992).

El Tribunal también ha advertido que el uso de este mecanismo no es apropiado en casos complejos de interés público o en que están envueltos elementos subjetivos o de intención. *Soto v. Hotel Caribe Hilton,* 137 D.P.R. a la pág. 301; véanse, además, *Piñero v. A.A.A.,* 146 D.P.R. a la pág. 904; *Rivera Rodríguez v. Departamento de Hacienda*, 99 **J.T.S. 144**, a la pág. 53; *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D.P.R. 117, 135 (1990).

La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881, 914 (1994).

Al hacer su evaluación, el Tribunal puede considerar la totalidad de las alegaciones y documentos que obren en el récord, los cuales se toman de la manera más favorable a la parte promovida. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. a la pág. 913; *Corp. Presiding Bishop of LDS v. Purcell,* 117 D.P.R. a las págs. 721-723; *Flores v. Municipio de Caguas,* 114 D.P.R. 521, 525 (1983); *Padín v. Rossi,* 100 D.P.R. 259, 263-264 (1971).

El peso para demostrar que no existe controversia real sustancial sobre los hechos materiales recae sobre la parte que solicita la sentencia sumaria. *Soto v. Rivera,* 144 D.P.R. 500, 518 (1997); *Pilot Life Ins. Co. v. Crespo Martínez,* 136 D.P.R. 624, 632 (1994). El sólo hecho de no presentar evidencia que contravierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria. *PFZ Props, Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. a la pág. 913.

Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no debe dictar sentencia sumaria cuando (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. a la pág. 913.

Por su parte, la Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2, autoriza a una parte a solicitar la desestimación, de su faz, de una demanda, cuando, entre otros fundamentos, la misma deja de exponer una reclamación que justifique la concesión de un remedio.

Ahora bien, el Tribunal Supremo de Puerto Rico ha advertido que este tipo de desestimación sólo procede cuando de un examen de las alegaciones se desprenda que la parte demandante no tendría derecho a remedio alguno bajo cualesquiera hechos que puedan ser probados y cuando la demanda no puede ser, de otro modo, enmendada para subsanar cualquier deficiencia en las alegaciones. *Roldán Rosario v. Lutrón, S.M.,* 151 D.P.R. ___ (2000), **2000 J.T.S. 133,** a la pág. 27; *Dorante v. Wrangler of P.R.,* 145 D.P.R. 408, 414 (1998); *Agosto v. Mun. de Río Grande,* 143 D.P.R. 174, 178 (1997); *Pressure Vessels de P.R. v. Empire Gas P.R.,* 137 D.P.R. 497, 505 (1994); *Granados v. Rodríguez Estrada I,* 124 D.P.R. 1, 48 (1989); *Clemente v. Depto. de la Vivienda,* 114 D.P.R. 763, 771 (1983).

Al adjudicar una moción de desestimación, el juzgador viene obligado a dar por ciertas todas las alegaciones bien hechas de la demanda e interpretarlas de la forma más favorable a la parte demandante. *Roldán Rosario v. Lutrón, S.M.,* **2000 J.T.S. 133,** a la pág. 27; *Harguindey Ferrer v. Universidad Interamericana de Puerto Rico,* 148 D.P.R. ___ (1999), **99 J.T.S. 54,** a la pág. 848; *Dorante v. Wrangler of P.R.,* 145 D.P.R. a las págs. 413-414.

El fundamento para esta postura es que, según ha clarado el Tribunal Supremo de Puerto Rico, bajo nuestro ordenamiento, el demandante no viene obligado a realizar alegaciones minuciosas y técnicamente perfectas, sino que se le permite limitarse a bosquejar a grandes rasgos su reclamación, mediante una exposición sucinta y sencilla de los hechos. *Sánchez Montalvo v. Autoridad de los Puertos,* 153 D.P.R. ___ (2001), **2001 J.T.S. 34,** a la pág. 967; *Dorante v. Wrangler of P.R.,* 145 D.P.R. a la pág. 413; *Agosto v. Mun. de Río Grande,* 143 D.P.R. a la pág. 178.

La Regla 10.2 establece que cuando una moción de desestimación incluye materias no contenidas en la demanda, la moción debe ser considerada como una moción de sentencia sumaria, debiendo ser considerada y

tramitada de conformidad. véanse, *Sánchez Montalvo v. Autoridad de los Puertos*, **2001 J.T.S. 34,** a la pág. 967; *Luán Investment Corp. v. Rexach Construction Co.,* 152 D.P.R. ___ (2000), **2000 J.T.S. 196**, a la pág. 552; *Torres Capeles v. Rivera Alejandro*, 143 D.P.R. 300, 309 (1997).

En el presente caso, según hemos visto, BFI había originalmente presentado una moción de sentencia sumaria solicitando la desestimación de la demanda, la que fue denegada por el Tribunal de Primera Instancia el 21 de septiembre de 2000, al concluir que existía controversia real sustancial sobre la intención de las partes en cuanto a las cláusulas del acuerdo invocadas por cada una.

Este dictamen no fue recurrido por BFI dentro del término establecido por la Ley de la Judicatura de Puerto Rico de 1994, 4 L.P.R.A. sec. 22k (Supl. 2001); véanse, *Zayas v. Royal Ins. Co. of P.R., Inc.,* 146 D.P.R. 694, 700 (1998); *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 D.P.R. 651, 657 (1997); véase, además, Hiram Sánchez Martínez, *Derecho Procesal Apelativo*, Lexis-Nexis de Puerto Rico, Inc., 2001, a las págs. 421-422.

BFI tampoco solicitó reconsideración del mismo dentro del término de quince (15) días contemplado por la Regla 47 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 47; véanse, además, *Reyes Díaz v. Estado Libre Asociado*, 155 D.P.R. ___ (2001), **2001 J.T.S. 171,** a las págs. 527-528; *Vega v. Alicea*, 145 D.P.R. 236, 240-242 (1998).

Por el contrario, el 8 de enero de 2002, BFI presentó una nueva solicitud para que se desestimara la demanda. Hemos examinado la moción de desestimación de BFI y estamos de acuerdo con la distinguida Sala recurrida en que la misma se dedica a reproducir los argumentos que el Tribunal de Primera Instancia había rechazado previamente, lo que constituye una táctica procesal no favorecida.

En su recurso, BFI insiste en que su planteamiento en su moción de desestimación es diferente al expresado en su moción original de sentencia sumaria. Inicialmente, según hemos visto, BFI planteó que correspondía desestimar la demanda, como cuestión de derecho, porque las secciones 4.3 y 4.9 del contrato le conferían el derecho de terminar unilateralmente la relación.

El Tribunal de Primera Instancia, sin embargo, consideró que existía controversia real sustancial sobre la intención de las partes, ya que dichas cláusulas parecían ser contrarias a la sección 10 del contrato, que ostensiblemente gobernaba la terminación del negocio, y que no contemplaba derecho alguno a favor de BFI para terminar unilateralmente el negocio. Ante el testimonio del presidente de FTC, el Tribunal denegó la moción de BFI.

La norma de interpretación establecida por el art. 1233 del Código Civil de Puerto Rico es que cuando los términos de un contrato son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus cláusulas, pero si las palabras parecieren contrarias a la intención de los contratantes deberá prevaler ésta sobre aquélla. 31 L.P.R.A. sec. 3471, véanse, además, *Caguas Plumbing, Inc. v. Continental Construction Corp.,* 155 D.P.R. ___ (2001), **2001 J.T.S. 169**, a la pág. 507; *Zeta Enterprises, Inc. v. E.L.A.,* 145 D.P.R. 1, 6 (1998).

El art. 1234 añade que para juzgar la intención de los contratantes deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato. 31 L.P.R.A. sec. 3472.; *Irizarry López v. García Cámara*, 155 D.P.R. ___ (2001), **2001 J.T.S. 164**, a la pág. 456; *Marcial v. Tomé,* 144 D.P.R. 522, 537-538 (1997); *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 853 (1991); *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 69-70 (1983); *Coop. La Sagrada Familia v. Castillo,* 107 D.P.R. 405, 417 (1978).

De ahí que, existiendo controversia sobre la intención de las partes en torno a las cláusulas en cuestión, el Tribunal entendiera apropiado denegar la moción de sentencia sumaria de BFI.

FTC plantea, sin embargo, que por tratarse de un contrato mercantil, de valor mayor de $300, el Tribunal de Primera Instancia no podía atender a evidencia extrínseca para fijar su contenido, ya que el art. 82 del Código de Comercio dispone que este tipo de obligaciones no puede ser probada por la declaración de testigos, *"a no concurrir con alguna otra prueba."* 10 L.P.R.A. sec. 1302.

Se trata de un argumento frívolo. En el presente caso, los términos del contrato obran por escrito. La controversia entre las partes no gira sobre la existencia del negocio, sino sobre su correcta interpretación. *Vila & Hnos., Inc. v. Owens Ill. de P.R.,* 825, 833 (1986); *A. Gelabert & Cía. v. Hernández,* 31 D.P.R. 834, 839 (1923); *Loíza Sugar Company v. Baquero & Cía,* 29 D.P.R. 863, 865 (1921).

El art. 81 del Código de Comercio establece, en este sentido, que los contratos mercantiles, en todo lo relativo a sus requisitos, modificaciones, excepciones, **interpretación**, y extinción y a la capacidad de los contratantes, se regirán en todo lo que no se halla expresamente establecido por el Código de Comercio o en leyes especiales, por las reglas generales del derecho común. 10 L.P.R.A. sec. 1301; véanse *Oliveras, Inc. v. Universal Ins. Co.* 141 D. P.R. 900, 920-921 (1996); *Julsrud v. Peche de P.R., Inc.,* 115 D.P.R. 18, 21 (1983); *P.R. Bedding Mfg. Corp v. Herger,* 91 D.P.R. 519, 523 (1964).

Ello implica que los preceptos del Código Civil sobre interpretación de contratos son aplicables supletoriamente a este tipo de obligaciones. Véase, también 31 L.P.R.A. sec. 12; véanse, por ejemplo, *CNA Casualty of P.R. v. Torres Díaz,* 141 D.P.R. 27, 38-39 (1996) [contrato de arrendamiento financiero]; *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. a las págs. 69-72 [contrato de distribución].

Observamos que el Código de Comercio contiene pocas reglas relacionadas a la interpretación de los contratos. Véanse, 10 L.P.R.A. secs. 1308-1311. Es el Código Civil, el que en forma detallada regula esta cuestión. Fernando Sánchez Calero, *Principios de Derecho Mercantil,* 2da edición, Editorial Revista de Derecho Privado, Madrid, 1996, a la pág. 44; véanse, además, Rodrigo Uría, *Derecho Mercantil,* 25ta edición, Marcial Pons, Madrid, 1998, a las págs. 644-645; Guillermo J. Jiménez Sánchez, *Derecho Mercantil,* Volumen II, 4ta edición, Ariel, Barcelona, 1997, a las págs. 234-235; Joaquín Garriges, *Curso de Derecho Mercantil,* Tomo IV, 7ma edición, Temis, Bogotá, 1987, a las págs. 29-30.

En el presente caso, según hemos visto, el Tribunal estimó que los términos del acuerdo no eran claros, sino que existía controversia entre las partes sobre su intención, por lo que resultaba necesaria la celebración de una vista evidenciaria. Ella es una aplicación correcta de la norma de derecho contenida en el citado art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *Caguas Plumbing, Inc. v. Continental Construction Corp.,* **2001 J.T.S. 169,** a la pág. 507; *Zeta Enterprises, Inc. v. E.L.A.,* 145 D.P.R. a la pág. 6; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. a las págs. 914-915.

Los litigantes tienen la obligación de no recargar los tribunales mediante la presentación de recursos frívolos y carentes de fundamentos.

Por los fundamentos expresados, se deniega el auto solicitado.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General